[Cite as *Henry v. Henry*, 2009-Ohio-3413.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

ANGELA D. HENRY,

    PLAINTIFF-APPELLANT,                 CASE NO. 8-08-12

    v.

BRIAN E. HENRY,                             O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Logan County Common Pleas Court
Domestic Relations Division
Trial Court No. DR06-01-0035

Judgment Reversed and Cause Remanded

Date of Decision:   July 13, 2009

APPEARANCES:

    *Angela D. Henry,* Appellant

    *Linda Cushman* for Appellee

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Angela D. Henry (hereinafter "Angela"), appeals from the Logan County Common Pleas Court's judgment entry and decree of divorce. For the reasons that follow, we reverse.

{¶2} Angela and defendant-appellee, Brian E. Henry (hereinafter "Brian"), were married on June 9, 1999. This was a second marriage for them both, and while each had children from their previous marriages, no children were born as issue of this marriage.

{¶3} On January 27, 2006, Angela filed for divorce, and on February 22, 2006, Brian counter-claimed for divorce. The parties separated in March 2006, and temporary orders were filed on April 5, 2006. Final hearings were conducted on June 9, 2006, October 5, 2006, and October 12, 2006. The magistrate filed his decision on February 21, 2007. Both parties objected to parts of the magistrate's decision, and on December 24, 2007, the trial court overruled both parties' objections. On May 13, 2008, the trial court issued its final decree of divorce.

{¶4} Angela now appeals and raises nine assignments of error. Because of the nature of this appeal, we elect to address all of Angela's assignments of error together.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT CLEARLY INDICATING WHAT WAS TO BE DISBURSED TO PLAINTIFF AND HOW AND WHEN, (WITH TIME LIMITS), PLAINTIFF WAS TO RECEIVE SAID DISBURSEMENTS, PROPERTY, AND AWARDS AND IN NOT RENDERING AN ENFORCEABLE, DEFINITIVE, ACTIONABLE JUDGMENT THAT CAN SUPPORT CONTEMPT PROCEEDINGS AND OR LAW SUITS WHEN DEFENDANT REFUSES TO COMPLY WITH THE COURTS ORDERS AGAIN.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT STIPULATING AN AMOUNT TO BE DIVIDED FOR THE RENTS OF THE LAND THAT IS FARMED AND FOR DEFENDANT/APPELLEE PROFIT SHARING BONUS FOR 2006.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE CALCULATION OF VALUE FOR THE MARITAL PROPERTY, IN NOT DIVIDING EQUALLY THE MARITAL PROPERTY, AND IN NOT ORDERING THE MARITAL PROPERTY SOLD.**

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT CLEARLY EXPLAINING THE BALANCE SHEET AND CLEARLY INDICATING DEADLINES ON HOW APPELLANT IS TO RECEIVE HER MARITAL PORTION AND AWARDS.**

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT ORDERING THE $20,128.90 IN THE MARITAL ACCOUNT AT THE TIME OF THE DIVORCE TO BE AWARDED TO PLAINTIFF FOR FINANCIAL MISCONDUCT AND FOR NOT ORDERING A QUALIFIED DOMESTIC RELATIONS ORDER FOR PLAINTIFF TO RECEIVE THE $20,128.90.**

**ASSIGNMENT OF ERROR NO. VI**

**THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT AWARDING PLAINTIFF MORE SPOUSAL SUPPORT FOR LONGER DURATION.**

**ASSIGNMENT OF ERROR NO. VII**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT RENDERING ORDERS ON THE $15,000.00 AND THE $3,500.00 THAT DEFENDANT STOLE FROM THE MARITAL ACCOUNT.**

**ASSIGNMENT OF ERROR NO. VIII**

**THE TRIAL COURT ERRED IN NOT ORDERING THE DEFENDANT TO CONVEY RIGHT TITLE AND INTEREST TO PLAINTIFF ON THE INHERITED RENTAL PROPERTIES THAT WERE ADJUDICATED SEPARATE PROPERTY.**

**ASSIGNMENT OF ERROR NO. IX**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT SETTING OFF THE COSTS OF THE $467.00 AMOUNT THAT PLAINTIFF HAD**

**TO PAY FOR INSURANCE WHEN DEFENDANT, AGAINST COURTS ORDERS TO KEEP HER ON THE INSURANCE, REMOVED PLAINTIFF'S VEHCILES' INSURANCE.**

**{¶5}** After reviewing the entire record, the magistrate's decision, and the trial court's final divorce decree, this Court finds that several of the trial court's findings are either inconsistent or unsupported by the record. Because of the inconsistencies between the magistrate's decision, the trial court's decision, and the trial court's distribution sheet, we are unable to interpret the trial court's judgment entry, and therefore, we cannot analyze Angela's assignments of error individually. Instead, we will address the issues as perceived in the judgment entry as they relate to her assignments of error. Overall, we find issues that include, but are not limited to the following: (1) the trial court's distribution of the equity of the marital home, (2) its distribution with one of the checking accounts, (3) the division of the sale proceeds of one of the vehicles, (4) the placement of the marital/separate debt, (5) the absence of Angela's entitled vehicle insurance expenses on the trial court's distribution sheet, and (6) the trial court's ruling as to Angela's temporary spousal support.

**{¶6}** First, with respect to the trial court's distribution of the marital assets, on paper the entire distribution appears to be inequitable. R.C. 3105.171(C); *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 421 N.E.2d 1293. The total value of the marital assets was found to be $142,868.44, and out of that

total, the trial court gave Brian $119,246.16, but only gave Angela $23,297.26. One of the specific issues concerning the seemingly inequitable division of marital assets concerns the marital home. The record indicates that Brian acquired from his mother what would later be considered the couple's marital home (256 County Road 113 West, Bellefontaine, Ohio) in 1998, which was encumbered by a mortgage. Later, in 2004, the parties refinanced the mortgage on the marital home, and both parties' names were put on the deed and mortgage. The magistrate found that this property should be considered marital property since the parties had refinanced the mortgage in order to renovate the home and to purchase a mobile home for Brian's mother. (Feb. 21, 2007 Mag. Dec.). In addition, the magistrate found that the parties had been paying the refinanced mortgage with marital funds, and since the property had appreciated during the marriage, Angela was entitled to her respective portion of its appreciated value. (Id.). The trial court agreed that the home was marital property with a marital value of approximately $74,000.[1] (May 13, 2008 JE at 2). However, in its distribution sheet, with respect to the marital residence, the trial court gave the full amount of the home's appreciated value to Brian. (Id. at 5). It is unclear why, even though the property was considered marital property, Angela was not given her portion of the home's appreciated value, and the trial court failed to explain its distribution.

---

[1] We note that in its distribution sheet, the trial court listed the value for the marital residence as $75,000.

{¶7} An additional concern regarding the marital home is the fact that the trial court failed to order the release of Angela's interest in the land. The deed that was signed in 2004 was a joint survivorship deed and both parties' names were put on it. (Plaintiff's Ex. 1). Because the trial court gave the property to Brian, it should have ordered Angela to release her joint survivorship interest in the property to Brian, like the trial court did with respect to Angela's separate rental property.

{¶8} Another problem that this Court finds with the marital assets portion of the trial court's distribution sheet is the distribution of the "Checking Account #3595." Brian testified that this checking account was his personal account and that prior to the marriage the account had $1,498.97 in it. (Oct. 12, 2006 Tr. at 19, 39); (Def. Ex. N). However, Angela testified that even though the account was in Brian's name, they had together saved up to $20,000 in the account during the marriage. (Oct. 5, 2006 Tr. at 41). Furthermore, there is evidence in the record that Brian withdrew at least $15,000 in cash prior to the initiation of the divorce action, which Angela has consistently claimed amounted to financial misconduct. (June 9, 2006 Tr. at 113); (Oct. 5, 2006 Tr. at 40-43); (Oct. 12, 2006 Tr. at 39-41); (Appellant's Amended Brief at 10, 13); (Addendum to Plaintiff's Closing Argument, Doc. No. 72); (Plaintiff's Obj. to Mag. Order, Doc. No. 113). Because of Brian's admission to the withdrawal, the magistrate ordered Brian to place the

$15,000 in his attorney's trust account. (June 9, 2006 Tr. at 113-14); (Oct. 12, 2006 Tr. at 40-41); (Def. Ex. R). In its decision, the magistrate held that since there was no testimony that these funds were separate property, the amount should be returned to the marital "pot" for distribution. (Feb. 21, 2007 Mag. Dec. at 4-5). The trial court agreed with the magistrate's determination that the $15,000 constituted marital property, and found that the magistrate did not err when it had declined to address Angela's allegations of Brian's financial misconduct. (Dec. 24, 2007 JE at 5-6).

{¶9} With that being stated, the trial court's subsequent final distribution of the checking account is confusing. In its distribution sheet, the trial court listed the "Checking Account #3595," which contained a total of $20,128.00, as marital property. Then, the trial court stated the distribution as follows:

| Marital Dist. H | Marital Dist. W | Notes |
|---|---|---|
| $20,128.00 | $0.00 | Fin. Misconduct |

(May 13, 2008 JE). First, this Court notes that there is nothing in the record that shows what happened to the $15,000 that was last placed in Brian's attorney's trust account. We presume, based on the above facts, that this money ended up in checking account #3595; however, we are unable to find anything to substantiate this claim. Second, it is unclear why the trial court listed the account as marital property, specifically gave everything to Brian and nothing to Angela, and wrote

"Fin. Misconduct" in the notes, since it had agreed with the magistrate's determination to not address the financial misconduct issue in its prior judgment entry.

{¶10} In addition to the checking account and marital home, it is unclear what happened with the distribution of the "1989 Chevy Van." With other marital assets, such as the "Go-Kart" and the "white lawn tractor," the trial court specified in its "Notes" column that the items were to be sold and the proceeds split evenly between the parties. (May 13, 2008 JE). With respect to the van, the trial court listed its marital value as $2,175.00, and split this value ($1,087.50) as between the parties, but failed to state how this division was to occur. (Id.). At oral argument, Angela informed this Court that Brian had sold the van, but said that she never received any of the sale proceeds. After searching the record, this Court is also unable to find what happened to the proceeds of this alleged sale.

{¶11} Along with finding problems with the trial court's division of the marital assets, this Court also has questions with the trial court's distribution of the marital/separate debt. For instance, the trial court in its written judgment entry stated that the residence located at 256 County Road 113 West, Bellefontaine, Ohio, was marital property, and that Brian was to assume and pay any and all indebtedness on the property, which was approximately $48,658.00. (May 13, 2008 JE). However, in its distribution sheet, the trial court listed this $48,658.00

as Brian's separate debt, which is contrary to its finding that the residence was marital property. (Id.). It appears that this debt should have been listed on the spreadsheet in the column titled "Marital Dist. H," instead of as Brian's separate debt.

{¶12} This Court also finds that there were items that Angela was entitled to receive through previous orders of the court, but were unaccounted for in the final divorce decree. On June 12, 2007, Angela filed a motion in contempt against Brian for failing to follow the court's temporary order restraining the parties from modifying, terminating, or changing any insurance policies. (Motion for Contempt, Doc. No. 87). In her motion, Angela alleged that Brian had removed her name from his automobile insurance policy, and as a result, she had to pay the premiums from June 1, 2007 until November 7, 2007 in order to maintain her coverage. (Id.). On December 4, 2007, after conducting a hearing on the matter, the trial court ordered Brian to "immediately reinstate motor vehicle insurance on the Plaintiff's 2003 Chevrolet Malibu," and restrained him from further terminating and/or cancelling the coverage until further order of the court. (Dec. 4, 2007 JE, Doc. No. 115). In addition, the trial court granted Angela a "Lump Sum Judgment against the Defendant in the amount of $648.17, representing the motor vehicle insurance premiums paid by Plaintiff for the period of June 1, 2007 to November 7, 2007, and the final amount due from Allstate Property &

Casualty." (Id.). Moreover, the trial court stated that "[s]aid Lump Sum Judgment shall be taken into consideration in the final distribution of the parties assets and debts." (Id.).

{¶13} To begin with, this Court notes that there are conflicting numbers as between Angela's brief and the record. Angela argues that she is entitled to $467.00, but the trial court's judgment entry indicates that she is entitled to $648.17. Regardless of this discrepancy, it is clear that Angela was entitled to the amount of premiums she paid as a consequence of Brian temporarily removing her from his policy. As such, this order should have been reflected in the trial court's final divorce decree in some manner. However, upon a review of the final divorce decree and the attached final distribution sheet, this Court is unable to determine how the trial court accounted for its previously ordered lump sum judgment.

{¶14} Furthermore, this Court also is concerned with the trial court's ruling on Angela's objection to her spousal support award. Soon after filing for divorce, Angela requested temporary spousal support in the amount of $100 per week. On April 6, 2006, the magistrate ruled on her motion after considering the parties' financial affidavits and hearing testimony from each party. In its order, the magistrate found that Angela worked part time, but that she was allowing her mother to live rent-free on a jointly owned rental property. (Apr. 6, 2006 Mag. Dec.). The magistrate stated that Angela was entitled to temporary spousal

support; however, because Angela could have been receiving approximately $400 per month from her mother, but decided not to charge her mother rent, the magistrate ordered that the source of Angela's temporary spousal support should come from the rental proceeds of this apartment. (Id.). The magistrate stated that it was up to Angela to determine whether she wanted to charge her mother or another person rent for that apartment, thereby receiving her spousal support, or whether she wanted to allow her mother to live in the apartment rent-free. (Id.). The trial court upheld the magistrate's order on September 21, 2006. (Sept. 21, 2006 JE).

{¶15} After the final hearings were conducted, the magistrate again addressed the issue of spousal support in its final decision. (Feb. 21, 2007 Mag. Dec. at 6). Because the magistrate had found that the rental property, where Angela's mother resided, was Angela's separate property rather than marital property, the magistrate considered its value ($129,000) and the rental income as part of Angela's holdings for purposes of her spousal support. (Id. at 3, 5). In addition, the magistrate stated that even though Angela currently worked as a paralegal and earned about $15,000 annually, if she was employed to her full capacity Angela could earn $25,000 to $30,000 annually. (Id. at 5). Thus, after considering all of the facts and applying the criteria prescribed in R.C. 3109.19,

the magistrate recommended spousal support in the amount of $75.00 weekly for a period of eighteen months. (Id. at 6).

{¶16} Angela objected to the magistrate's decision arguing that the magistrate incorrectly found that the rental income from her separate rental property could form the basis of her spousal support. (Plaintiff's Obj. to Mag. Dec., Doc. No. 113). Angela pointed to the rule that spousal support cannot come from one's separate, non-marital property. See R.C. 3105.19; *Okos v. Okos* (2000), 137 Ohio App.3d 563, 739 N.E.2d 368. As a result, Angela claimed that the magistrate should have increased her spousal support award to compensate her for the temporary spousal support that she should have received. (Plaintiff's Obj. to Mag. Dec., Doc. No. 113).

{¶17} The trial court overruled her objection on December 24, 2007. (Dec. 24, 2007 JE at 3-4). In its judgment entry, the trial court stated that R.C. 3105.18(B) allowed a court to award either party reasonable temporary spousal support during the pendency of any divorce proceeding. (Id.). Furthermore, the trial court found that the purpose of awarding temporary spousal support was to preserve the status quo during the divorce proceeding, and since the award was an equitable award pendente lite, it was not necessary to revisit the issue in the final judgment. (Id. at 4, citing R.C. 3105.18(B); *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 709 N.E.2d 208). The trial court stated that while the magistrate later

found the rental property to be Angela's separate property, it had also later determined that Angela was voluntarily under-employed, a fact that had been brought up by Brian at the temporary spousal support hearing. (Id.). As a result, the trial court concluded that there was no error of law in the magistrate's determination with respect to this issue. (Id.).

{¶18} It is unclear why the trial court overruled Angela's objection. It appears that the trial court implicitly determined that Angela was never entitled to temporary spousal support due to her under-employment, and therefore, the magistrate was not wrong to not account for this amount in its decision. However, if the magistrate's original decision to award Angela temporary spousal support was not erroneous in and of itself, she was entitled to be compensated for her award when it was later discovered that the basis of her award (the rental property) was her separate property and not marital property. It is not clear whether the trial court disagreed with the magistrate's original decision to award Angela temporary spousal support, or if it only agreed with the magistrate's later decision to not account for the support, which had been properly given.

{¶19} In addition, as a final and general matter, although timetables are not required, this Court believes that the better practice is for the trial court to provide the parties with some kind of time guideline in which they are to accomplish the tasks ordered for them to perform. We believe that some sort of schedule may

help eliminate some of the uncertainty that currently exists with respect to the parties' court-imposed obligations.

**{¶20}** Therefore, based on the above, we sustain Angela's assignments of error to the extent that the trial court's judgment should be vacated and the matter remanded for further proceedings.

**{¶21}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, J., concurs.**
**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**