[Cite as *Henry v. Henry*, 2012-Ohio-655.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY


ANGELA D. HENRY,

    PLAINTIFF-APPELLANT,          CASE NO. 8-11-04

    v.

BRIAN E. HENRY,               O P I N I O N

    DEFENDANT-APPELLEE.


**Appeal from Logan County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. DR06-01-0035**

**Judgment Affirmed**

**Date of Decision:   February 21, 2012**


APPEARANCES:

    *Angela D. Henry,* **Appellant**

    *Linda J. Cushman*  **for Appellee**


SHAW, P.J.

{¶1} Plaintiff-appellant, Angela D. Henry ("Angela"), appeals from the February 9, 2011 judgment of the Logan County Court of Common Pleas, Division of Domestic Relations, granting the parties a divorce.

{¶2} Angela and defendant-appellee, Brian E. Henry ("Brian"), were married on June 9, 1999. No children were born as issue of their marriage.

{¶3} On January 27, 2006, Angela filed for divorce, and on February 22, 2006, Brian counter-claimed for divorce. The parties separated in March of 2006, and temporary orders were filed on April 5, 2006. Final hearings were conducted on June 9, 2006, October 5, 2006, and October 12, 2006. The magistrate filed his decision on February 21, 2007. Both parties objected to parts of the magistrate's decision, and on December 24, 2007, the trial court overruled both parties' objections. On May 13, 2008, the trial court issued its final decree of divorce. Angela appealed the judgment of the trial court, asserting nine assignments of error.

{¶4} On July 13, 2009, this Court vacated the judgment of the trial court, and reversed and remanded the matter, concluding "that several of the trial court's findings [were] either inconsistent or unsupported by the record." *Henry v. Henry*, 3rd Dist. No. 8-08-12, 2009-Ohio-3413.

{¶5} Upon remand, the trial court ordered the parties to participate in mediation. The parties subsequently reached a "limited agreement" regarding the

division of personal property and household assets, and Angela's entitlement to a portion of Brian's retirement accounts.

{¶6} On December 7, 2009, the trial court issued temporary orders granting Angela spousal support in the amount of $75.00 per week and ordered the parties to attend mediation prior to pre-trial to attempt to resolve and settle, by way of stipulation, any matters upon which the parties may agree. The trial court also summarily determined that "a re-trial of the Divorce in it's [sic] entirety is in order." (JE Dec. 7, 2009).

{¶7} On January 25, 2010, the parties appeared before the magistrate for a pre-trial hearing. The final divorce hearing took place on February 19, 2010.

{¶8} On July 12, 2010, the magistrate issued his decision, stating his conclusions and recommendations. Brian filed objections to the magistrate's decision with the trial court, but failed to file the transcript of the magistrate's proceedings within the thirty-day timeframe required by Civ.R. 53(D)(3)(b)(iii). Angela did not file her own objections to the magistrate's July 12, 2010 decision, but instead filed a response to Brian's objections, in which she stated that she "agrees with the findings of the Magistrate and believes his decision is fair and equitable to both parties." (Pl. Resp. to Def. Obj. July 28, 2010).

{¶9} On September 16, 2010, the trial court overruled Brian's objections and adopted the findings of fact and conclusions of law contained in the

magistrate's decision. The trial court ordered "the parties to file a joint stipulation as to the amounts due and owing on the [residence located at] 256 [County Road] 113 and the 316-318 and 320 North Detroit Street properties as ordered in paragraphs 6 and 7 of the magistrate's decision, and the balance sheet provided in paragraph 11 of the magistrate's decision. This joint stipulation and balance sheet shall be filed within thirty days of this judgment, and shall be accompanied by a proposed final judgment entry of divorce for the court's journalization." (JE Sept. 16, 2011 at 4).

{¶10} On November 2, 2010, after reviewing the proposed judgment entries submitted by the parties, the trial court filed a judgment entry remanding the case to the magistrate for the limited purpose of resolving two specific issues. First, the trial court noted that the magistrate never considered whether Angela is entitled to certain farm rental income and ordered him to address this issue. The second issue the trial court remanded to the magistrate concerned the valuation of any marital equity in the former marital home located at 256 CR 113.

{¶11} On November 16, 2010, the magistrate entered his "Findings on Remand" in which he determined that Angela was equally entitled to the farm rental income. The magistrate also determined that the real estate located at 256 CR 113 is Brian's separate property due to the fact that he acquired the property

-4-

prior to the parties' marriage, but that Angela was entitled to half of the marital equity accrued in the home after the parties married.

{¶12} On December 1, 2010, Angela filed objections to the magistrate's supplemental decision. In particular, Angela objected to the magistrate's finding that the real estate located at 256 CR 113 is Brian's separate property. Angela also objected to the magistrate's finding in his July 12, 2010 decision that the rental properties located at 316-318 and 320 North Detroit Street are marital property.

{¶13} On February 9, 2011, the trial court issued the parties' final divorce decree, adopting the findings and conclusions contained in the magistrate's July 12, 2010 and November 16, 2010 decisions. Angela appealed the decision of the trial court, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO APPEALS COURT ORDERS IN HAVING A DE NOVO HEARING INSTEAD OF SIMPLY DOING THE JUDGMENT ENTRY OVER AGAIN AS ORDERED BY THE APPEALS COURT.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW IN ALLOWING THE TESTIMONY OF AN "EXPERT WITNESS" WHEN PLAINTIFF WAS NOT GIVEN A LIST OF WITNESSES OR REPORTS.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW IN NOT ALLOWING PLAINTIFF/APPELLANT [TO] BE REPRESENTED BY COUNSEL.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT FINDING THE PROPERTY AT CO. RD. 113 WEST, BELLEFONTAINE, OHIO TO HAVE BEEN CONVERTED AND TRANSMUTED INTO MARITAL PROPERTY.**

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT ALLOWING PLAINTIFF TO GET HER PERSONAL PROPERTY.**

**{¶14}** For ease of discussion, we elect to address some of Angela's assignments of error together and out of order.

*Third Assignment of Error*

**{¶15}** In her third assignment of error, Angela asserts that the trial court erred "in not allowing [her to] be represented by counsel." Specifically, Angela claims that "[t]he Judge did not adequately determine if it was necessary to have [her] rights protected during a hearing he simply, arbitrarily and randomly stated

an immediate 'no' with total disregard for the fact that [she] would not be able to properly represent herself." (Appt. Brief at 10-11).

{¶16} Initially, we note that Angela failed to file a transcript of the trial court proceedings in which she claims the trial court denied her access to counsel. The appellant bears the burden of demonstrating error by reference to the record of the trial court proceedings, and it is the appellant's duty to provide the reviewing court with an adequate transcript. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980); see App.R. 9(B). Thus, we are limited in our review of this issue and must presume the regularity of the trial court proceedings in the absence of evidence to the contrary. *Burrell v. Kassicieh*, 128 Ohio App.3d 226, 232, 714 N.E.2d 442 (3d Dist.1998).

{¶17} In addition, the right to be represented by counsel in a civil proceeding where the state seeks to take the party's life, liberty, or property is guaranteed by the Fifth Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment. *Roth v. Roth*, 65 Ohio App.3d 768, 776 (6th Dist.1989). However, litigants have no generalized right to appointed counsel in civil actions. See *State ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110, 515 N.E.2d 928 (1987). Especially in a civil case between individual litigants, there is no constitutional right to representation. *Roth* at 776.

{¶18} Moreover, the record indicates that Angela had ample time to retain an attorney between this Court's remand of this case to the trial court on July 13, 2009, and the trial on the matter on February 19, 2010.

{¶19} For all these reasons, Angela's third assignment of error is overruled.

*First Assignment of Error*

{¶20} In her first assignment of error, Angela argues that the trial court erred in ordering a de novo hearing on remand from this Court, rather than simply re-writing the final divorce decree using the evidence from the previous proceedings. In particular, Angela claims that the trial court's decision to hold a de novo hearing is contrary to the prior judgment of this Court in *Henry v. Henry*, 3rd Dist. No. 8-08-12, 2009-Ohio-3413. In making this assertion, Angela misconstrues the reasoning of this Court in our prior decision.

{¶21} Angela raised nine assignments in the previous appeal which primarily involved the trial court's division and distribution of marital property and debt, and the award of spousal support to Angela. In that decision, we pointed out numerous discrepancies between the findings of the trial court and the evidence in the record. One of our primary concerns with the trial court's judgment was that, in several areas, it appeared to be inconsistent with the findings and conclusions of the magistrate without providing any explanation. We were also troubled by the fact that the record, particularly the distribution sheet listing

the parties' debts and assets, did not appear to support the findings of the trial court. Because of these substantive issues, we *vacated* the judgment of the trial court and, reversed and remanded the case for further proceedings. Vacate means "[t]o nullify or cancel; make void; invalidate * * *." Black's Law Dictionary (9th Ed.2009), at 1688. We did not order, as Angela argues, for the trial court to simply "re-write" the final divorce decree.

{¶22} Upon remand, the trial court determined that a de novo hearing was warranted. Given the state of the record in the previous proceedings, and in particular our inability to discern any legitimate basis from the record to support the trial court's conclusions in those proceedings, we believe that the trial court's decision to hold a de novo hearing on remand was prudent and did not constitute an abuse of discretion. Notably, Angela fails to cite to any case law in support of her position that the trial court abused its discretion in ordering a de novo hearing under these circumstances.

{¶23} Moreover, prior to the de novo hearing, the parties were able to stipulate and agree to many of the issues assigned as error in the first appeal. By the time the parties appeared before the magistrate at the de novo hearing, only three issues remained contested. Even assuming *arguendo* that the trial court erred in ordering a de novo hearing upon remand, Angela fails to demonstrate any

prejudice suffered as a result of the trial court's decision. Angela's first assignment of error is overruled.

*Second and Fifth Assignments of Error*

{¶24} In her second and fifth assignments of error, Angela challenges the admissibility of the testimony elicited from Brian's expert witness at trial regarding the valuation of the marital real estate at the termination of the parties' marriage. Angela also argues that the magistrate and trial court erred in not allowing her to retrieve her personal property from Brian's home. Notably, Angela did not object to the admissibility of Brian's expert witness at the trial proceedings. Angela also did not present any evidence at trial relating to her personal items which remained in Brian's home for the magistrate to consider and rule upon.

{¶25} In addition, Angela failed to raise these issues before the trial court by specifying her challenges on these points in the form of an objection to either of the magistrate's decisions addressing these matters. Because Angela did not object to these specific portions of the magistrate's decisions she cannot now raise them on appeal.

{¶26} Civil Rule 53(D)(3)(b)(ii) governs the filing of objections to a magistrate's decision and provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Except for

a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless that party has objected to that finding or conclusion to the trial court. Civ.R. 53(D)(3)(b)(iv).

{¶27} Consequently, Angela has waived all but plain error in the trial court's judgment. The plain error doctrine is not favored in civil appeals, and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099, syllabus.

{¶28} After a thorough review of the record, we do not find exceptional circumstances in this present case affecting the fairness or integrity of the judicial process to constitute plain error.

{¶29} We note that Angela asks this court for leniency in its determination because she was unrepresented by counsel. However, a party proceeding pro se is held to the same procedural standards as other litigants that have retained counsel. *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003–Ohio–6448, 800 N.E.2d 25, at ¶ 10. While a court may grant a certain amount of latitude toward pro se

litigants, the court cannot simply disregard the Rules of Civil Procedure in order to accommodate a party who fails to obtain counsel. *Pinnacle Credit Servs., LLC v. Kuzniak*, 7th Dist. No. 08 MA 111, 2009–Ohio–1021, at ¶ 30. Accordingly, Angela's second and fifth assignments of error are overruled.

*Fourth Assignment of Error*

{¶30} In her fourth assignment of error, Angela contests the trial court's determination and division of marital and separate property regarding two specific pieces of real estate: 1) the marital home located at 256 CR 113, West, Bellefontaine, Ohio and; 2) the parties' rental properties located at 316-318 and 320 North Detroit Street, Bellefontaine, Ohio.

{¶31} In a divorce proceeding, the trial court must determine whether property is marital or separate. *Gibson v. Gibson*, 3d Dist. No. 9–07–06, 2007–Ohio–6965, ¶ 29, citing R.C. 3105.171(B), (D). This Court reviews a trial court's classification of property as marital or separate under a manifest weight of the evidence standard. *Gibson* at ¶ 26 (citations omitted). Accordingly, we will not reverse the trial court's judgment in this regard if the decision is supported by some competent, credible evidence. *DeWitt v. DeWitt*, 3d Dist. No. 9–02–42, 2003–Ohio–851, ¶ 10.

{¶32} Once the trial court classifies the property, it must then "divide the marital and separate property equitably between the spouses * * *." R.C.

3105.171(B). The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v Jackson*, 2008–Ohio–1482, ¶ 15 (3d Dist.), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶33} Marital property includes property that is currently owned by either or both spouses *and* that was acquired by either or both of the spouses during the marriage. See R.C. 3105.171(A)(3)(a). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009–Ohio–6864, 925 N.E.2d 167, ¶ 15.

1. *The real estate located at 256 CR 113, West, Bellefontaine, Ohio*

{¶34} The trial court made the following disposition of this property in the parties' final divorce decree:

> **8. Brian Henry shall retain as his own, free and clear of any claim of Angela Henry, the property located at 256 CR 113, Bellefontaine, Ohio. Brian shall remove Angela from any indebtedness associated with that property, and shall indemnify**

> **and hold her harmless therefrom. The court finds that the value of this real estate to be $111,000 at the time of the marriage, and $165,600 as of the termination of the marriage. The court finds that there is a mortgage balance due thereon, as of September 30, 2009,[1] in the amount of $38,336.06. Therefore, the court determines that the equity is $127,263.94. This court finds that $111,000 and an additional $5,000 of this equity is Brian's separate property. The remaining equity of $11,263.94, being marital property, shall be divided between the parties with Brian owing Angela $5,631.97. The net equity owed, after dividing all the real estate, shall be paid to the other party within thirty days of the filing of this judgment entry, and Angela shall execute a quit claim deed to Brian for this property at the time of the final settlement of the real estate obligations herein.**

(Final Divorce Decree, Feb. 9, 2011).

{¶35} On appeal, Angela asserts that the trial court erred in making this property distribution for two specific reasons: 1) that the trial court erred in calculating the premarital value of the 256 CR 113 property and; 2) that the entire value of the 256 CR 113 property should have been characterized as marital because marital funds were used to make improvements on the property and the real estate was encumbered by a mortgage held in both parties' names. We will address in turn each of Angela's contentions regarding this property.

{¶36} It is undisputed by the parties that the marital home was located at 256 CR 113. It is also undisputed that Brian's mother transferred the property to Brian prior to the parties' marriage. At trial, Brian submitted the general warranty deed executed by his mother and recorded on March 13, 1998, that conveyed to

---

[1] The date of the termination of the parties' marriage stated in the final divorce decree.

Brian the family homestead located on the property and the surrounding 21.72 acres. In addition, Brian presented receipts at trial demonstrating that, prior to the parties' marriage, he paid a $5,000 deposit on December 31, 1997, toward the May 22, 1998 purchase of the mobile home located on the property. The parties were subsequently married on June 9, 1999.

{¶37} Angela maintains that, regardless of Brian's premarital interest, the entire value of the 256 CR 113 property should be considered marital property because she and Brian took a mortgage out on the property during their marriage and executed a new deed, which placed the property in both of their names. Angela argues that this mortgage and deed "converted" and "transmuted" Brian's separate property interest in the real estate into marital property.

{¶38} Contrary to Angela's argument, R.C. 3105.171(A)(6)(b) states that "the commingling of separate property with other property of any type *does not destroy the identity of the separate property as separate property, except when the separate property is not traceable*." R.C. 3105.171(A)(6)(b) (emphasis added). Thus, traceability is the key to determining whether separate property has lost its separate character after being commingled with marital property. *Ward v. Ward*, 3d Dist. No. 01–03–63, 2004–Ohio–1390, ¶ 4, citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

**{¶39}** Here, Brian presented unequivocal evidence establishing that he owned the 256 CR 113 property prior to the marriage. Brian also presented an appraisal demonstrating that the homestead and the surrounding 21.72 acres were valued at $111,000 one month prior to the parties' marriage. Angela presented no evidence at trial to support her position that the parties' execution of a mortgage on the property "transmuted" Brian's premarital and separate interest in the real estate into marital property. However, the magistrate and the trial court did consider the numerous substantial improvements made on the property during the parties' marriage and determined that all equity accrued in the property after the parties' married was marital property and that Angela was entitled to half of the marital equity in the real estate.

**{¶40}** Based on the evidence in the record, we find that the trial court did not err in finding that Brian had sufficiently traced his premarital interest in the 256 CR 113 property and that this interest remained Brian's separate property. Moreover, we find that the trial court's distribution of this real estate to the extent that it constituted marital property was equitable.

**{¶41}** Angela also contends that the trial court erred in valuing Brian's premarital interest in the 256 CR 113 property. The parties each submitted an appraisal of the property prior to the parties' marriage as evidence at trial. Angela's appraisal was performed on January 29, 1998 and valued the property at

$42,000. However, Angela's appraisal only valued the house and the curtilage consisting of two acres. Angela presented no evidence for the value of the entire 21.72 acre property and homestead prior to the marriage.

**{¶42}** Brian submitted a "retrospective appraisal" of the property, which was performed in 2006, but estimated the value of the property in 1999, one month before the parties married. Brian's appraiser viewed the property and then researched market values of "comparables" to the 256 CR 113 property on May 31, 1999 to determine that the value of the entire 21.72 acres plus the homestead was $111,000 as of that date. The appraiser also noted in his report that the appraisal was "prepared in accordance with the Uniform Standards of Professional Appraisal Practice." (Def. Ex. DD at 3).

**{¶43}** Notably, Angela presented no evidence at trial to dispute the findings of Brian's appraisal valuing the *entire* 21.72 acres and homestead prior the parties' marriage at $111,000. Absent evidence to the contrary, we conclude that the trial court did not abuse its discretion in finding that the premarital value of the property was $111,000.

2. *The Rental Properties Located at 316-318 and 320 N. Detroit Street, Bellefontaine, Ohio.*

**{¶44}** The trial court made the following disposition of this property in the parties' final divorce decree:

**7. Angela Henry shall retain as her own, free and clear of any claim of Brian Henry, the property located at 316-318 and 320 North Detroit Street, Bellefontaine, Ohio. Angela shall remove Brian from any indebtedness associated from that property, and shall indemnify and hold him harmless therefrom. The court finds that the value of this real estate to be $116,100, with a mortgage balance due thereon, as of September 30, 2009, in the amount of $89,377.32. Therefore, the court determines that the equity is $26,722.68. The court finds that $10,000 of this equity is Angela's separate property. The remaining equity of $16,722.68, being marital property, shall be divided between the parties, with Angela owing Brian $8,361.34. The net equity owed, after dividing all of the real estate, shall be paid to the other party within thirty days of the filing of this judgment entry, and Brian shall execute a quit claim deed to Angela for this property at the time of final settlement of the real estate obligations herein.**

(Final Divorce Decree, Feb. 9, 2011).

**{¶45}** On appeal, Angela maintains that the trial court erred in determining that the rental properties located at 316-318 and 320 North Detroit Street, Bellefontaine, Ohio are marital property. Angel asserts that these properties are her separate property.

**{¶46}** The evidence adduced at trial demonstrates that on September 27, 2002, after having been married for three years, Angela and Brian jointly executed a land installment contract with Eicholtz, Inc. to purchase the real estate located at

-18-

316-318 and 320 North Detroit Street.[2] The parties stipulated to the fact that Angela paid the $10,000 down payment to purchase these properties with funds that were her separate property.

{¶47} The evidence also demonstrates that the parties maintained a joint checking account relating to expenses and income received from the rental properties. In 2004 and 2005, the parties included the rental income and expenses from these properties in their jointly filed tax returns, which were admitted as exhibits at trial. Brian testified that during the marriage, he performed a significant amount of maintenance on the rental properties to prepare them for renters and that he helped manage the rental properties. Brian also presented several cancelled checks drafted on his separate checking account, totaling $1,752.93, that he claimed demonstrated his payment of various expenses relating to the rental properties.

{¶48} Angela acknowledged that Brian performed some of the maintenance on the rental properties and paid some expenses, but claimed that he was reimbursed for those expenses and his labor. However, Angela again presented no evidence to substantiate her position and Brian disputed Angela's claims that he was reimbursed. Angela also admitted to giving Brian a manager position relating

---

[2] We note that on appeal Angela makes a separate argument regarding these properties, asserting that the land installment contract is now in default and that Eicholtz, Inc. has repossessed the properties. However, no evidence relating to the status of the land installment contract or any default was presented at trial and, consequently, this particular issue was not considered by either the magistrate or the trial court in the prior proceedings. Therefore, we cannot consider Angela's argument as it relates to this contention because it is not properly before us on appeal.

to the rental properties because, at the time, she wanted him to feel included in the investment.

**{¶49}** In sum, the parties jointly entered into the land installment contract during their marriage to purchase the rental properties and claimed the expenses and income related to the rental properties on their joint tax returns. The evidence supports that the parties both contributed time, labor, and money into the rental properties during their marriage. Based upon the parties' stipulation, the magistrate and the trial court found that Angela was entitled to recoup the $10,000 she paid as a down payment as her separate property from the equity in the rental properties valued at the termination of the marriage. The remaining evidence in the record supports the trial court's conclusion that the rental properties located at 316-318 and 320 North Detroit Street are marital property. Based on the evidence presented at trial, we find no error in the trial court's determination that the rental properties are marital properties and conclude that the trial court's ultimate distribution of the rental properties was equitable. Angela's fourth assignment of error is overruled.

**{¶50}** For all these reasons, the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**
**PRESTON, J., concurs in Judgment Only.**