[Cite as *Bouillon v. Bouillon*, 2015-Ohio-2886.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

DORIS J. BOUILLON,

      PLAINTIFF-APPELLEE,            CASE NO. 13-14-33

      v.

JOSEPH J. BOUILLON,              O P I N I O N

      DEFENDANT-APPELLANT.

---

DORIS J. BOUILLON,

      PLAINTIFF-APPELLEE,            CASE NO. 13-15-02

      v.

JOSEPH J. BOUILLON,              O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeals from Seneca County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. 11-DR-0251**

**Judgments Affirmed**

**Date of Decision:   July 20, 2015**

---

APPEARANCES:

    *John M. Kahler II* **for Appellant**

    *Jeffrey J. Whitman* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Joseph J. Bouillon ("Joseph"), appeals the October 9, 2014 judgment of the Common Pleas Court of Seneca County, Ohio, Domestic Relations Division, which overruled his objections to the magistrate's decision, granted a divorce to Plaintiff-appellee, Doris J. Bouillon ("Doris"), and ordered division of the parties' property. In addition, Joseph separately appeals the January 27, 2015 judgment of the same court, which found him in contempt of court for the fourth time and sentenced him to ninety days in the Seneca County Jail. Because the two appeals concern the same trial court case and are interrelated, we elect to consolidate them for the purpose of this opinion. For the reasons that follow, we affirm the trial court's judgments.

### *Factual and Procedural Background*

{¶2} Joseph and Doris were married on February 14, 1996. On August 16, 2011, Doris filed a complaint for divorce on the basis of extreme cruelty, gross neglect of duty, and incompatibility. (R. at 2.) Among other things, she requested an equitable division of property and spousal support. On September 19, 2011, the magistrate of the trial court issued temporary orders, ordering Joseph to pay Doris temporary spousal support in the sum of $700.00 per month. Additionally, the trial court ordered Joseph to deliver to Doris's attorney copies of his 2008, 2009, and 2010 income tax returns, as well as business records for his business, JB Tours. (R. at 11.) On October 3, 2011, Joseph filed his answer to Doris's

complaint for divorce, denying allegations of extreme cruelty, gross neglect of duty, or incompatibility. Joseph's answer stated that he was "unwilling to grant a divorce," "unwilling to grant an equitable division of property," and that "he will not grant spousal support." (R. at 12.)

{¶3} On November 3, 2011, Doris filed her first motion to show cause, alleging that Joseph had failed to pay the temporary spousal support and to deliver the financial documentation to her as ordered. (R. at 13.) After a hearing, Joseph was found in contempt of court and upon his failure to purge himself of contempt, on April 11, 2012, he was sentenced to five days in the Seneca County Jail. (R. at 23, 27.)

{¶4} On May 2, 2012, Doris filed another motion to show cause, again alleging that Joseph had failed to pay spousal support and to deliver a copy of his business records for JB Tours. (R. at 33.) Additionally, Doris alleged that Joseph canceled her car insurance in violation of the magistrate's order. After a hearing, Joseph was found in contempt of court and upon his failure to purge himself of contempt, on October 22, 2012, he was sentenced to thirty days in the Seneca County Jail. (R. at 39, 44, 52.) Upon Joseph's motion and Doris's consent, the jail sentence was stayed. (R. at 53.) In November 2012, Doris received an $8,000.00 payment from Joseph. Doris did not receive any more money from Joseph, and on December 10, 2012, she moved for imposition of the previously-stayed sentence, asserting that Joseph had failed to fully comply with the

discovery request and to pay temporary spousal support. (R. at 59.) After a hearing, the trial court imposed the previously-stayed sentence of thirty days in jail. (R. at 52.)

{¶5} Also on December 10, 2012, Doris moved for an order of sale of all marital real estate, business, and other tangible property, "[d]ue to the contemptuous obstreperous behavior of the Defendant who has yet to provide his complete discovery for the last year." (R. at 58.) Doris requested that the sale be handled by a receiver appointed by the trial court and that the costs associated with the receiver be assessed to Joseph. Upon the parties' stipulation a receiver was appointed.

{¶6} On March 25, 2013, Doris filed a motion to sell assets, which included "all real estate of the parties, the travel agency business, as well as all personal property in said business and residences." (R. at 63.) The motion was based on Joseph's continued failure to pay spousal support and his refusal to pay for the receiver. After a hearing, the trial court granted Doris's motion in part, ordering "the sale of the parties' real estate, as soon as possible, except for the marital residence." (R. at 75.) The trial court further ordered the sale of all personal property located within the real property, except for the parties' clothing, the parties' personal effects, and one bedroom suite. The order made no mention of selling Joseph's business. The proceeds of the sale were to be used for payment of the realtor fees. Any remaining proceeds were to be deposited into Doris's

attorney's IOLTA account for distribution at a later date. (*Id.*) Joseph appealed that order of the trial court and we affirmed in *Bouillon v. Bouillon*, 3d Dist. Seneca No. 13-13-44 (2013). The record does not disclose whether the sale occurred before the date of the final divorce hearing.

{¶7} On November 25, 2013, Doris filed her third motion to show cause, alleging as grounds for contempt Joseph's continued failure to pay spousal support, to produce a copy of his business records for JB Tours, and to pay her auto insurance. (R. at 85.) After a hearing, the trial court found Joseph in contempt of court and ordered Joseph to serve ninety days in the Seneca County Jail. (R. at 90.)

{¶8} On May 12, 2014, the parties appeared before the magistrate of the trial court for a final divorce hearing. Doris and Joseph testified at the hearing. Additionally, Shirley Thomas ("Ms. Thomas"), Doris's sister testified on her behalf. Doris testified about incidents of domestic violence by Joseph, his alcohol abuse, and his absences from home. Both parties testified about their marital assets and liabilities. Joseph brought partial financial records to the final hearing, and they were discussed by the parties.

{¶9} Following the hearing, the magistrate issued its findings of fact and conclusions of law. The magistrate summarized the parties' testimony, as well as the provided exhibits and recommended that the divorce should be granted, citing extreme cruelty as one of the grounds for divorce. (R. at 100, at 6, June 16, 2014.)

The magistrate determined that Doris's testimony about Joseph's conduct that destroyed her "peace of mind and happiness," was more credible than Joseph's denial of the incidents. (*Id.* at 6-7.) With respect to the property division, the magistrate referred to the trial court's previous order of sale, as affirmed by this court, and commented that it would "not revisit the previously determined property matter." (*Id.* at 8.) As to the matters not resolved by the prior order, the magistrate made the following recommendations that are relevant to this appeal.

- Doris was to be awarded all of the personal property that was at the time in her possession, including a 1999 Mercury Sable vehicle. Joseph was to be awarded his clothing, jewelry, personal effects, one bedroom suite, and the 1992 Ford Van.

- Joseph was to be awarded the marital residence. The magistrate noted that no credible evidence was provided regarding the present value of the marital residence or any debt accumulated on the line of credit. Therefore, the magistrate recommended that Joseph take the marital residence subject to any existing indebtedness and remove Doris's name from the line of credit.

- Joseph was to be awarded all interest in JB tours subject to all of the debt associated with the business. The allocation of the debt to Joseph stemmed from the magistrate's finding that Joseph "substantially and willfully failed to disclose marital property." (*Id.* at 9.) The magistrate

found that Joseph intentionally defeated Doris's distribution of assets by refusing to comply with the court's orders for disclosure of financial records. The magistrate remarked that on the date of the final hearing, Joseph introduced "self-serving documents created by someone that works for JB Tours and provided no credible evidence regarding the business profits and losses." (*Id.*)

- Due to Joseph's continued refusal to pay the temporary spousal support, the magistrate recommended that the spousal support arrears be covered by the proceeds from the previously-ordered sale of real and personal property. Any proceeds still remaining were to be split equally between the parties. The spousal support was to terminate on May 12, 2014, and no further spousal support order was issued. All temporary spousal support arrears were to be preserved for collection.

- The parties' Fifth Third bank account number 1182 and CIBC (Canadian) bank account were to be closed, with any remaining funds split equally between the parties.

{¶10} Joseph filed objections to the magistrate's decision, raising ten issues as alleged errors. (R. at 103, Aug. 14, 2014.) The trial court overruled the objections and adopted the magistrate's decision in its entirety. (R. at 112, Oct. 9, 2014.) Like the magistrate, the trial court did not revisit the issue of the previously-ordered sale of personal and real property. It did determine, however,

how to allocate the proceeds of the sale. In particular, the trial court ordered the proceeds to be used for the payment of realtor fees and spousal support arrears, with any remaining proceeds to be split equally between the parties.

{¶11} In its judgment entry, the trial court commented on Joseph's continued refusal to provide financial information. The trial court referred to our prior judgment, where we stated that we found it "difficult to comprehend how Joseph can remotely maintain an argument that the magistrate's findings were unsupported in the record with regard to his cooperation and failure to pay." (*Id.* at 3, quoting *Bouillon*, 3d Dist. Seneca No. 13-13-44.) The trial court further noted that "[t]he transcript in the final hearing is replete with more of the same on the part of the Defendant. There are still no tax records, no CPA records; nothing other than self-generated documents. Pages from check registers are brought in but not one cancelled check." (*Id.* at 3.)

{¶12} Following the trial court's judgment entry, Joseph was once again found in contempt for failure to comply with the trial court's prior orders. He was ordered to serve ninety days in jail, but the sentence was stayed pending the appeal of the contempt order.

{¶13} Joseph's two appeals raise a total of seventeen assignments of error, which we quote below in their entirety. We renumber the second set of assignments of error with numbers eleven through seventeen (originally numbers one through seven in the appellate case number 13-15-02).

*Assignments of Error*

**1.  The trial court erred in granting the Plaintiff's divorce on the grounds of extreme cruelty.**

**2.  The trial court erred in granting the Plaintiff a divorce where the evidence was insufficient in that there were no legal descriptions of the parties' many parcels of real estate entered into evidence, there were no vehicle identification numbers presented into evidence, and there was insufficient evidence of debts (which the Magistrate acknowledged on page 9 of the Magistrate's Decision: "The undersigned is not able to determine all of the assets or debts of the business because the evidence was not sufficient to provide all of that information.")**

**3.  The trial court erred in failing to equitably divide the parties' assets and debts.**

**4.  The trial court erred in ordering that the CIBC (Canadian) bank account be closed and the proceeds divided between the parties as the funds in said bank account were business assets that are needed to pay business transportation costs.**

**5.  The trial court erred in ordering that the Fifth Third Bank account be closed and the proceeds divided between the parties as the funds in said bank account were proceeds from the parties' rental business and were needed to pay rental related expenses.**

**6.  The trial court erred in failing to determine that several items of personal property were Defendant Joseph Bouillon's separate property which he acquired and owned prior to the parties' marriage including, a desk from Defendant Joseph Bouillon's father, a second bedroom suit [sic], a china cabinet, a wardrobe, a kitchen table and chairs, a hutch, dishes, and silverware.**

**7.  The trial court erred in failing to determine that the real estate located at 783 Angela Drive, Fostoria, Ohio was Defendant Joseph Bouillon's separate property which he acquired and owned prior to the parties' marriage.**

**8.    The trial court erred in ordering that temporary spousal support arrears be preserved for collection as the award of monthly temporary spousal support was unreasonable and Defendant Joseph Bouillon was not financially able to pay said temporary spousal support.**

**9.    The trial court erred in ordering that the proceeds from the sale of the parties' remaining personal and real property be applied to temporary spousal support arrears.**

**10.    The trial court erred in ordering that all of the parties' remaining personal and real property be sold.**

**11.    The trial court erred in finding the Appellant in contempt for failure to pay spousal support where the Appellant was financially unable to pay spousal support.**

**12.    The trial court erred in finding the Appellant in criminal contempt for failure to pay spousal support and failure to produce discovery where the Appellant had no contumacious intent.**

**13.    The trial court erred in finding the Appellant in contempt for failing to use raffle winnings to pay spousal support where the raffle proceeds had previously been considered in the divorce and other contempt proceedings.**

**14.    The trial court erred in failing to limit the testimony regarding the Appellant's alleged failure to pay spousal support to contemptuous actions since the last time he was found in contempt.**

**15.    The trial court erred in punishing the Appellant as and for contempt for not using the proceeds from the sale of property that occurred prior to the filing of the divorce to pay spousal support.**

**16.    The trial court erred in finding Appellant in contempt for failing to produce documents pursuant to a request for production of documents where the Appellant did not have the documents to produce.**

**17.  The trial court erred in finding the Appellant in contempt for failure to produce documents pursuant to a discovery request where the contempt hearing occurred after the final divorce hearing and after a final divorce decree was issued and therefore the issue of the production of discovery documents was moot.**

*Summary of Arguments and the Standard of Review*

{¶14} The first assignment of error challenges the trial court's determination with respect to the grounds for divorce.  The second, third, fourth, fifth, sixth, seventh, and tenth assignments of error challenge the trial court's division of property.  In the eighth and ninth assignments of error, Joseph challenges the order for payment of temporary spousal support arrears.  Finally, assignments of error eleven through seventeen challenge the trial court's fourth order of contempt.

{¶15} An appellate review of the trial court's decision regarding the above issues is under the abuse of discretion standard.  *Stump v. Stump*, 3d Logan, No. 8-07-11, 2007-Ohio-6553, ¶ 5 (grounds for divorce); *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 26 (allocation of marital assets); *Siekfer v. Siekfer,* 3d Dist. Putnam No. 12-06-04, 2006-Ohio-5154, ¶ 15 (issues concerning awards of spousal support); *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 38 (contempt).  A trial court will not be found to have abused its discretion unless its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound.  *Muckensturm v. Muckensturm*, 3d Dist. Hancock No. 5-11-38, 2012-Ohio-3062, ¶ 16; *Bruce v. Bruce,* 3d Dist.

Marion No. 9-10-57, 2012-Ohio-45, ¶ 13.  With this standard in mind we proceed to review Joseph's assignments of error.

### *First Assignment of Error—Grounds for Divorce*

**{¶16}** In his first assignment of error Joseph submits that the trial court erred in granting a divorce on the grounds of extreme cruelty.  This court has previously determined that

> [t]he term "extreme cruelty" as used in R.C. 3105.01 is not limited in scope to acts of physical violence or the reasonable apprehension thereof, but is sufficiently broad to encompass acts and conduct the effect of which is calculated to permanently destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital relationship intolerable.

*Verplatse v. Verplatse*, 17 Ohio App.3d 99, 100, 477 N.E.2d 648 (3d Dist.1984); *accord Wuebker v. Wuebker*, 3d Dist. Auglaize No. 2-03-04, 2003-Ohio-2954, ¶ 9.  As stated above, the trial court has discretion to determine what facts constitute extreme cruelty and such a determination depends "upon all the circumstances of the particular case."  *Verplatse* at 100-101.

**{¶17}** In the instant case, the magistrate and the trial court found evidence of extreme cruelty upon Doris's sworn testimony.  Doris testified that she "went through some beatings," during her marriage because Joseph would "come home intoxicated and beat [her] up."  (Tr.[1] at 14.)  Doris further testified that Joseph damaged her back when he pushed her "down on the floor extremely hard and beat

---

[1] The record on appeal includes transcripts from various hearings.  For clarity, we use the following designations: "Tr." refers to the Transcript of Proceedings of the Final Hearing for Divorce held May 12, 2014; "Tr. Contempt" refers to the transcript from Contempt Hearing held December 17, 2014.

on [her] back" with his elbows and his fists while holding her down "real tight." (*Id.*) She testified that it caused her extreme pain. (*Id.*) Doris further testified that as a result of being beaten and thrown on the floor she sustained a damaged valve and required a defibrillator. (Tr. at 19.) Doris testified about an incident that happened in 2010 when Joseph bit off her left nipple. (Tr. at 21-22.) Doris stated that as a result of that incident she started sleeping with a knife under her pillow. (Tr. at 22-23.) Another incident involved Joseph calling Doris "really bad names" and yelling at her repeatedly during a trip to Amish Country, which was followed by a threat that Joseph would leave Doris there without any means for returning home. (Tr. at 24-26.) Doris testified that she was scared of Joseph and afraid of him doing more physical harm to her. (Tr. at 23.) Ms. Thomas testified that she observed Joseph drink a lot and be "nasty" toward Doris when they were out together. (Tr. at 67-68.) She did not personally observe any of the incidents described by Doris. (Tr. at 67.)

{¶18} On appeal Joseph claims that the trial court erred in believing Doris's testimony and cites to his own testimony denying the occurrence of the events described above. (*See* Tr. at 151, 153, 155, 161-163.) When we review the trial court's credibility findings, we presume that they are correct. *Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, at ¶ 14.

> This presumption arises because the trial court is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal* [*Co. v.*

*Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984)]. Accordingly, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Id.* at 81.

*Id.* Accordingly, judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.*

{¶19} We hold that the trial court's finding of extreme cruelty in the instant case is supported by Doris's sworn testimony. Additionally, it is supported by Ms. Thomas's testimony that Joseph was "nasty" toward Doris and that "Doris has a good reputation in the community for truth and honesty." (Tr. at 67-69.) Therefore, under the applicable standard of review, the trial court's judgment will not be reversed on appeal.

{¶20} Joseph's first assignment of error is overruled.

### *Second, Third, and Tenth Assignments of Error—Division of Property*

{¶21} In his second, third, and tenth assignments of error, Joseph challenges the trial court's distribution of marital assets and debts. In a divorce action, the trial court has broad discretion in the allocation of marital assets. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5; *Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 26. When dividing marital property, "a trial court must generally assign and consider the values of marital assets in order to equitably divide those assets." *Schwarck* at ¶ 26.

> In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets. However, R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable.

*Neville* at ¶ 5, citing R.C. 3105.171(C), *and Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *accord Schwarck* at ¶ 26.

{¶22} Joseph complains that the trial court granted a divorce and divided the marital property "[w]ithout sufficient findings regarding the value of the parties' assets and debts" and "[w]ithout adequate evidence as to the parties' real estate and vehicles." (App't Br.[2] at 12, 13.) In particular, Joseph complains that no value was assigned to the parties' real estate on Beverly Drive and on East Lytle Street in Fostoria, Ohio, and real estate in North Fort Myers, Florida. He fails to recognize that all real estate, except for the marital residence located at 783 Angela Drive in Fostoria, Ohio, was ordered sold in the judgment entry filed in September 2013, and affirmed by this court. The magistrate, in her "decision," affirmed by the trial court, expressly indicated that it would "not revisit the previously determined property matter." (R. at 100, at 8.) Likewise, the trial court did not disturb its previous order of sale. Since the real property referenced by Joseph in these assignments of error was not subject to the judgment entry that we

---

[2] Because two separate briefs were filed in the two appeals that are the subject of this opinion, we use the following designations: "App't Br." refers to the Appellant's Brief in case 13-14-33 (challenging the final decree of divorce); "App't Br. 13-15-02" refers to Appellant's Brief in case 13-15-02 (challenging the finding of contempt).

are reviewing herein, we reject any challenges related to it, as they are not properly before us.

{¶23} Similarly, we reject Joseph's claims asserted in the tenth assignment of error, to the trial court's order to sell the parties "remaining personal and real property." (App't Br. at 16-17.) These claims only refer to the property previously ordered sold, as affirmed by this court in 2013. The judgment entry that we are currently reviewing makes no order to sell the remaining personal and real property, but merely directs how the previously-ordered sale should be achieved. (R. at 112, at 7.) Therefore, the claims asserted in this assignment of error are not properly before us.

{¶24} Moreover, the trial court did not err to Joseph's detriment by dividing any remaining assets and liabilities, which were not covered by the previous order of sale, without complete evidence as to their value. The magistrate and the trial court recognized that any such deficiencies were due to Joseph's continued refusal to provide any sort of records, in spite of the motions to compel and sanctions of contempt. R.C. 3105.171 allows the trial court to "compensate the offended spouse with a distributive award or with a greater award of marital property" upon a finding of financial misconduct, which includes "concealment," and "nondisclosure" of assets. R.C. 3105.171(E)(4); *see Huener v. Huener*, 110 Ohio App.3d 322, 324, 674 N.E.2d 389 (3d Dist.1996). The magistrate made an express finding of such conduct by Joseph, by stating, "The

undersigned concludes that the husband intentionally defeated wife's distribution of assets by refusing to comply with court orders." (R. at 100, at 9.) The trial court rejected Joseph's objections to the magistrate's factual findings and held that "the Magistrate equitably divided the assets." (R. at 112, at 5.) We affirm the trial court's distribution of assets in a manner consistent with the statute and supported by the record. Any inequalities in the division of the property in favor of Doris are justified by the finding of financial misconduct through concealment and nondisclosure of assets, which is supported by the evidence, as discussed in detail in our analysis of the twelfth and sixteenth assignments of error below.

{¶25} Thus, the second, third, and tenth assignments of error are overruled.

### *Fourth and Fifth Assignments of Error—Bank Accounts*

{¶26} In the fourth and fifth assignments of error Joseph complains about the trial court's order to close the CIBC and the Fifth Third bank accounts and to divide the funds equally between the parties. He claims that the money in the CIBC account is needed for business expenses of JB Tours, while the money in the Fifth Third bank account is needed to pay "various rental expenses." (App't Br. at 14-15.) No legal arguments are presented in support of the suggestion that the trial court errs by ordering funds split when a party claims to "need" them. Except for one citation to the transcript, which contradicts a claim that the money in the CIBC bank account was used exclusively to reimburse JB Tours for

business expenses (*see* Tr. at 55-56), Joseph includes no references to parts of the record in support of the alleged errors.

{¶27} App.R. 16(A)(7) requires that an appellant include in his or her brief: "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies*." (Emphasis added.) "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 7. Rather, "an appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2): 'if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).' " *Id.* at ¶ 4, quoting App.R. 12(A)(2). We thus decline to find an error on the part of the trial court, as alleged in the fourth and fifth assignments of error, when these errors are not properly argued on appeal. *See id* at ¶ 7 (" 'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.' "), quoting *State v. Watson*, 126 Ohio App.3d 316, 321, 710 N.E.2d 340 (12th Dist.1998). We note, however, that no error prejudicial to Joseph is apparent from the record.

{¶28} The fourth and fifth assignments of error are overruled.

{¶29}

***Sixth and Seventh Assignments of Error—Separate Property***

**{¶30}** In the sixth and seventh assignments of error Joseph demands reversal for the trial court's alleged failure to treat certain items as separate property. When distributing assets and liabilities in a divorce proceeding, the trial court must first determine whether property is marital or separate property. *Schalk v. Schalk*, 3d Dist. Seneca No. 13-07-13, 2008-Ohio-829, ¶ 6. The party seeking to establish that property is separate rather than marital bears "the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Id.* "In determining whether the trial court has appropriately categorized property as separate or marital, the standard of review is whether the classification is against the manifest weight of the evidence." *Eggeman v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 14. We are, however, " 'guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.' " *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 46, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997). Therefore, we will not reverse the trial court's decision if it is supported by some competent, credible evidence. *Eggeman* at ¶ 14.

**{¶31}** In the sixth assignment of error Joseph argues that the trial court erred in failing to determine that certain items of personal property were his

separate property, not subject to the distribution. Two separate lists are given for the items covered by this assignment of error: one in the assignment of error itself and one in the three-sentence argument in support. In total, these items seem to include "a hutch, a kitchen table and chairs, three bedroom suites, two end tables, a coffee table, and all but two of the guns," "a desk from Defendant Joseph Bouillon's father, * * * a china cabinet, a wardrobe, * * * dishes, and silverware." (App't Br. at 15.) Our review of the record discloses that these items were either awarded to Joseph or previously ordered sold by the trial court's September 2013 judgment entry, as affirmed by this court. In particular, the trial court's September 2013 judgment entry stated, "Any personal property located within the real property should be sold or auctioned. The personal property located at the marital residence should be sold except for any of the plaintiff's clothing and personal effects, the defendant's clothing and personal effects, and one (1) bedroom suite." (R. at 75.) We will not revisit that prior judgment entry. *See Hopkins v. Dyer*, 104 Ohio St.3d 461, 463, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15. We note, however, that in her recommendations, filed on June 10, 2013, the magistrate stated, "The defendant has not made any claim that there is separate property not subject to sale." (R. at 65, at 3.)

{¶32} In the seventh assignment of error Joseph argues that the trial court erred in failing to determine that the marital residence was his separate property. As stated above, it was Joseph's burden to provide evidence for such a

determination. He did not. At the hearing, Doris testified that all the real estate that the parties owned at the time of the divorce hearing was acquired after the marriage. (Tr. at 32.) Joseph testified that he had bought the marital house in 1964, before he married Doris. (Tr. at 171, 234.) He admitted, however, that both parties' names are on the title. (Tr. at 234.) Joseph provided no documentation to satisfy his burden of proving that the marital residence was separate property that he had obtained prior to marriage. Accordingly, he failed to satisfy his burden and we will not reverse the trial court's resolution of the conflicting testimony where the finding is supported by the record.

{¶33} Based on the foregoing discussion, the sixth and seventh assignments of error are overruled.

### *Eighth and Ninth Assignments of Error—*
### *Spousal Support Arrears*

{¶34} In the eighth and ninth assignments of error Joseph expressly challenges the trial court's decision to preserve temporary spousal support arrears for collection and to apply proceeds from the sale of the parties' property to pay the spousal support arrears. It is Joseph's contention that he should not have been responsible for the spousal support arrears because he could not afford the payments. Joseph argues the two assignments of error together without providing any legal support for his claims. Joseph's arguments in these assignments of error do not comply with App.R. 16(A), and as such, they do not merit our review. *See Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, at ¶ 4-8. We note,

however, that "[t]he record is filled with reasons why temporary spousal support should be preserved," as further addressed in our discussion of the eleventh and twelfth assignments of error. (R. at 112, at 6; *see, e.g.*, Tr. at 114-115, 205, 211-212, 238.)

**{¶35}** The eighth and ninth assignments of error are overruled.

### Eleventh, Twelfth, and Sixteenth[3] Assignments of Error—Inability Defense

**{¶36}** In these assignments of error Joseph argues that he should not have been held in contempt because he was unable to comply with the trial court's orders. While inability to comply is a defense in a contempt proceeding, "the burden of proving the inability is on the party subject to the contempt order." *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 20 (2012); *accord In re Purola*, 73 Ohio App.3d 306, 313-314, 596 N.E.2d 1140 (3d Dist.1991).

**{¶37}** The trial court rejected Joseph's claims of inability to pay, stating, "Again, there was no documentation of an inability to pay but rather the same testimony by the Defendant as this court has heard before." (R. at 117, at 1.) The partial documentation about marital debts and Joseph's expenses introduced at the final hearing was self-serving, prepared by Joseph or someone employed in his business, and unsupported by any verifiable records. Further, his testimony about

---

[3] As indicated above, assignments of error eleven through seventeen in this opinion correspond with assignments of error one through seven in the appellate case number 13-15-02.

marital debts was at least partially contradicted by Doris's testimony at the contempt hearing that there were no loans, liens, or encumbrances on the real properties. (Contempt Tr. at 34-36.) Similarly, Joseph's testimony about lack of income from JB Tours or lack of income from the rental properties was unsupported by any verifiable records. According to Doris, however, all rental properties were occupied and producing income. (Contempt Tr. at 34-36.) Because credibility determinations are for the trial court, we hold that the trial court did not err in finding that Joseph's testimony and self-serving documents were not credible and that Joseph had failed to satisfy his burden of proving inability to pay.

{¶38} Similarly, the trial court did not err in finding that Joseph's claims about inability to produce financial documents were disingenuous. (*See* R. at 112, at 5; R. at 117, at 1-2.) These findings have overwhelming support in the record and are most clearly evidenced by a review of Joseph's testimony at the final hearing.

{¶39} For example, at the final hearing Joseph admitted that he had failed to provide financial documents for 2013 and 2014 to Doris's attorney as requested, even though the documents were available to him, as he brought some of them to the final hearing. (Tr. at 71-75; 81-82.) It should be noted, however, that the documentation brought to the final hearing consisted of some of the most recent records of Joseph's "check registers," but did not include statements from the prior

months or years. (*See* Tr. at 218-222.) When asked why only the last entries in the "checkbook registers" were provided when the request for production of documents asked for the last four years of records, Joseph responded, "I don't know." (Tr. at 223-224.)

{¶40} Joseph admitted that he had access to his business value checking accounts statements "for quite some time," but he had failed to comply with the court's order to provide this information to Doris's attorney *before* the final hearing. (Tr. at 83-84.) He admitted that he had access to the Fifth Third bank account, which contained rent deposits, but he had failed to provide any statements about it. (Tr. at 85-86.) When asked to explain the reasons for his failure to provide these records, Joseph responded, "I don't know. I don't know if I was out of town. I really don't know." (Tr. at 85-86.) Further, Joseph admitted that he had online access to statements at Old Fort Bank, but he had failed to provide those to Doris's attorney. (Tr. at 89-91.) He had failed to provide a statement from the Huntington bank account, although he had this document available to him at the final hearing. (Tr. at 92-93.) Additionally, although Joseph testified that he did not receive statements from the CIBC Canadian bank account, he had access to the balance each time he made a deposit or a withdrawal; he had failed to provide the balance information to Doris's attorney. (Tr. at 94-99; Contempt Tr. at 33.)

**{¶41}** Joseph admitted that he had an interest estimate on the business building from his accountant, but he had failed to provide it to Doris's attorney. (Tr. at 131.) He brought a document which purported to represent JB Tours income and expenses for 2013 to the final hearing. This document was prepared by "one person" from his office and was not supported by any records to support the expenses listed on the document. (Tr. at 224-225.) In fact, the document listed expenses but never indicated to whom the payments were made, even though Joseph claimed that he had that information available to him. (Tr. at 226-227.)

**{¶42}** At the final hearing Joseph also admitted that he had failed to provide Doris's attorney with the names and addresses of his tenants, in violation of the court order. (Tr. at 103-104.) He admitted that he had failed to bring the titles to his vehicles or any other documentation about the vehicles, in violation of the court orders. (Tr. at 105; Contempt Tr. at 31.) As an explanation for this failure, Joseph stated, "I didn't get them together. I don't know." (Tr. at 105-106.) Additional failures to which Joseph admitted included: failure to provide a list of all firearms he owned (Tr. at 106), failure to provide records of charitable donations for the previous three years (Tr. at 109), failure to provide bank statements for his business JB Tours (Tr. at 109-110), failure to provide records about payments for the business building (Tr. at 131), and many more (*see, e.g.*, Tr. at 140, 146). Joseph admitted that he had failed to provide any updated

- 25 -

documents regarding his financial situation in 2013 or 2014 prior to the final hearing.  (Tr. at 87-88.)

{¶43} In several situations Joseph admitted that he had not even attempted to obtain the information that he later claimed was unavailable to him.  (Tr. at 127, 132, 137.)  In one situation, Joseph admitted that he had a record of a transaction on his bank statement but he did not bring it to court because he "didn't know it was going to come up here."  (Tr. at 213.)

{¶44} The record is replete with the facts in support of Joseph's willful lack of cooperation, rather than inability, with respect to providing financial records. Therefore, we affirm the trial court's determination that Joseph had failed to satisfy his burden of showing inability to produce financial records.

{¶45} Based on the foregoing discussion, the eleventh, twelfth, and sixteenth assignments of error are overruled.

### *Thirteenth, Fourteenth, and Fifteenth Assignments of Error—Reasons for the Finding of Contempt*

{¶46} In the thirteenth, fourteenth, and fifteenth assignments of error Joseph asserts that the trial court ordered contempt for "failure to use the Moose Lodge winnings for spousal support" and for "failure to use the proceeds from the sale of the Florida real estate for spousal support."  (App't Br. in case 13-15-02 at 14, 16.)  He also claims that the trial court improperly allowed the testimony about the above assets and about his rental income over the last three years.  (*Id.* at 15-16.)

- 26 -

**{¶47}** Joseph entirely misstates the reasons for which he was found in contempt of court for the fourth time. The trial court's judgment expressly states that he was guilty of contempt because "[t]he testimony at the hearing clearly show[ed] that Defendant ha[d] made no effort to comply with this Court's orders." (R. at 117, at 1.) The testimony about the Moose Lodge winnings and about the proceeds from the sale of the Florida real estate was presented to show that Joseph had the ability to pay spousal support. (*See* Contempt Tr. at 23.) The trial court ordered Joseph held in contempt for failure to pay spousal support and not for failure to use these particular assets to satisfy his obligation.

**{¶48}** Because the premise of Joseph's claims in these assignments of error fails, we overrule the thirteenth, fourteenth, and fifteenth assignments of error.

*Seventeenth Assignment of Error—Mootness*

**{¶49}** In the seventeenth assignment of error, Joseph claims that the issue of noncompliance with the trial court's orders compelling discovery was moot after the final divorce decree had been issued and that the finding of contempt for failure to provide discovery was thus, improper. Once again Joseph fails to provide any law in support of his argument. Conversely, the Ohio Supreme Court held that the dismissal of an underlying civil action does not divest a court from jurisdiction to impose *punitive* sanctions of contempt for failure to produce documents. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 553-556, 2001-Ohio-15, 740 N.E.2d 265 (2001); *see also State v. Kilbane*, 61 Ohio St.2d 201, 205, 400

N.E.2d 386 (1980) (holding that a court has power to punish the contemnor and "to vindicate the authority of the court"). No other viable legal argument is made in support of this assignment of error.

{¶50} Accordingly, the seventeenth assignment of error is overruled.

### *Conclusion*

{¶51} Having reviewed the arguments, the briefs, and the record in these cases, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgments of the Common Pleas Court of Seneca County, Ohio, Domestic Relations Division are therefore affirmed.

*Judgments Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/hlo**