[Cite as *Schwarck v. Schwarck*, 2012-Ohio-3902.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY


WENDY LYNN SCHWARK,

    **PLAINTIFF-APPELLEE/**
    **CROSS-APPELLANT,**               **CASE NO. 2-11-24**

    **v.**

JOHN CHRISTIAN SCHWARK,

                            **O P I N I O N**

    **DEFENDANT-APPELLANT/**
    **CROSS-APPELLEE.**


**Appeal from Auglaize County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. 2010-DR-146**

**Judgment Affirmed**

**Date of Decision: August 27, 2012**


**APPEARANCES:**

    *William E. Huber* **for Appellant/Cross-Appellee**

    *John A. Poppe* **for Appellee/Cross-Appellant**

Case No. 2-11-24

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant/Cross-Appellee, John Christian Schwarck ("Chris"), appeals judgment of the Auglaize County Court of Common Pleas, Domestic Relations Division, granting a divorce from Plaintiff-Appellee/Cross-Appellant, Wendy Lynn Schwarck ("Wendy"). On appeal, Chris contends that the trial court abused its discretion in the division of debt and in the allocation of corporate property as marital property, and that the trial court failed to properly apply R.C. 3105.171(F) in making a distributive award. In her cross-appeal, Wendy claims that the trial court erred in failing to consider the gross deposits into Chris' business as income for purposes of determining spousal support. For the reasons set forth below, the judgment is affirmed.

{¶2} The parties were married on May 23, 1992, and have two minor children who were ages 16 and 13 at the time of the hearing. The parties separated in November 2008, but a complaint for divorce was not filed until July 9, 2010. A hearing on the divorce was held before the trial court on August 1 and August 18, 2011. The trial court heard testimony from both of the parties, primarily concerning financial matters and issues concerning the children. Several relatives testified as to the parties' parenting abilities. There was also testimony from a C.P.A., who handled the parties' personal and Subchapter S corporate income tax

returns, and from a certified property appraiser, who testified about the reports he had prepared concerning the values of the parties' personal and real property.

{¶3} The parties owned no residential real estate and each resided, rent free, in property owned by family members. (Oct. 3, 2011 J.E., ¶ 6) They were joint owners of land, valued at $35,750, upon which Chris operated his cabinetry business. (*Id.* at ¶ 7; Tr., p. 349). There was personal property to be divided that was valued by the property appraiser and broken down into categories stating which party was entitled to receive the property. (*Id.* at ¶ 8; Exhibit U). Wendy had a deferred compensation plan through her current employer, Edward Jones, valued at $1,200, and the parties had three cash value life insurance policies valued at approximately $15,185.

{¶4} During the marriage, most of the parties' income was derived from several businesses that were set up as Subchapter S corporations, on the advice of Chris' tax accountant, for the purpose of tax savings and liability issues. (Tr., p. 350) Chris formed and dissolved several of these corporations, which were primarily involved in Commercial Driver's License ("CDL") testing services, Chris' cabinet making businesses, and some farming. At the time of the marriage, Chris was self-employed as a cabinet maker, operating a sole proprietorship known as Schwarck Cabinets. (Tr. p. 322) He later incorporated that business into Tri-Max Building Supplies, Inc. Subsequently, he formed another

corporation known as Tri-Max Enterprises, Inc., which was involved in the CDL testing business. Around 2008, Tri-Max Building Supplies, Inc. was dissolved but the cabinet-making business continued to operate, changing its name to Tri-Max Enterprises, Inc. (Tr. p. 230-232; 336) Wendy assisted with the CDL business venture, but that business ended several years ago. Chris owned 100% of the stock in the companies, was president, was the sole employee, and received a salary from the businesses. (Tr. p. 351) In his deposition, Chris testified that the business currently was not worth anything other than the assets in the shop, which consisted of "obsolete woodworking equipment." (Deposition of Chris Schwarck, pp. 21-24, admitted as Plaintiff's Exhibits 1 and 2)

{¶5} The parties also had credit card debt that was nearly $27,000 when they separated in 2008, although the debt had been subsequently consolidated and paid down to less than $22,000 by Wendy. The credit card debt was allegedly created primarily to fund the Mary Kay cosmetic sales business that Wendy participated in from 1999 through 2007. (Tr., p. 22) Chris testified that he never wanted Wendy to sell Mary Kay products, that he thought it was a "pyramid scheme," that the business lost money every year, and that he believed Wendy should be solely responsible for that debt. (Tr., pp. 263-272)

{¶6} Wendy, however, testified that money was always tight and Chris controlled all of the finances. (Tr. pp. 23, 37) Once she started the Mary Kay

-4-

business, Chris stopped giving her any spending money and limited her money for groceries to $100 a week. (Tr. p. 28) She testified that Chris told her to use the money from Mary Kay, and that she had to utilize the Mary Kay money to help pay for the groceries, vehicle repairs, medical bills, prescriptions, and anything that was needed. (*Id.*) Therefore, Wendy would charge her Mary Kay merchandise purchases on a credit card, but when she received payment from her customers, she would only pay a minimum amount on the credit card balance and would use the remainder of the money from the cosmetics sales to pay for family expenses.[1] (Tr., pp. 30-31)

{¶7} On October 3, 2011, the trial court filed its Judgment Entry granting the divorce. The trial court denied Chris' motion for shared parenting, finding that the animosity and lack of communication between the parties would make a shared parenting plan impossible. (J.E., ¶ 11) Wendy was named the residential parent, and Chris was ordered to pay $244.76 per child for monthly child support. (*Id.*)

{¶8} The trial court found that Wendy had been earning approximately $25,000 per year working for Edward Jones, but was temporarily laid off. The trial court utilized the tax records provided to calculate that Chris' average salary from 2008 through 2010 was $28,292. After considering the factors in R.C.

---

[1] There was no evidence in the record as to whether or not there was any Mary Kay inventory left to be considered in the property division.

3105.18, the trial court did not find that spousal support was appropriate. (J.E., ¶¶ 4-5)

{¶9} In dividing the assets, the trial court utilized the list of property and valuations from the Appraiser's Report (Plaintiff's Exhibit 30; Defendant's Exhibit U), and the real estate comparable analysis (Plaintiff's Exhibit 31). The trial court awarded Wendy personal property, consisting mostly of household goods, worth $1,154.30, and it awarded Chris personal property, consisting mostly of vehicles and equipment/inventory related to his business, valued at $37,764.25. Chris was also awarded the jointly owned real property upon which his business was located, worth $37,764.25, for a total of $73,514.25 in assets. In addition to the personal property, Wendy was awarded the retirement account and life insurance policies, for a total of $17,541.10 in assets. In order to equalize the division of assets, Chris was ordered to pay Wendy $27,986.57.

{¶10} The trial court also found that the credit card debt attributed to the Mary Kay purchases was entirely a marital debt and should be divided, utilizing the valuation as of the date of the separation. (J.E. ¶9) Wendy was ordered to be responsible for repayment of the entire $26,919.12 debt, but Chris was ordered to pay Wendy half of that amount, $13,459.56, to equalize the debt.

{¶11} Therefore, in order to effect an equal division of the value of the assets and debts between the parties, Chris was ordered to pay Wendy

$41,746.13.[2] The trial court ordered the payment to be made within 90 days, with the judgment carrying the statutory rate of interest if not paid within 90 days.

{¶12} It is from this judgment that Chris timely appeals, raising the following three assignments of error.

## First Assignment of Error

**The trial court abused [its] discretion in its division of debt.**

## Second Assignment of Error

**The trial court abused [its] discretion in allocating corporate property as personal and marital property.**

## Third Assignment of Error

**The trial court failed to properly apply Ohio Revised code 3105.171(F) in making a distributive award.**

{¶13} In her cross-appeal from the judgment, Wendy raises the following single assignment of error for our review.

## Cross-Appellant's Assignment of Error

**The trial court erred in failing to consider the gross deposits into [Chris's] business as income for purposes of determining spousal support.**

*Chris' Appeal*

{¶14} Chris' assignments of error all involve the division of the parties' property and debt. The Ohio Revised Code requires a trial court to "determine

---

[2] This amount also included $300 in attorney fees, due to extra legal fees incurred by Wendy and attributed to discovery violations by Chris. (J.E., ¶ 11)

what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). The court is then required to "divide the marital and separate property equitably between the spouses[.]" *Id.* The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

{¶15} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3rd Dist. No. 11–07–11, 2008–Ohio–1482, ¶ 15, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989).

{¶16} An abuse of discretion is more than an error in judgment; it signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011-Ohio-38, ¶ 9 (3d Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9-10-57, 2012-Ohio-45, ¶ 13, citing *State v. Boles*, 2d Dist. No.

23037, 2010–Ohio–278, ¶ 17–18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Blakemore; Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{**¶17**} Although appellate courts review a trial court's division of property under an abuse of discretion standard, a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence. *Henry v. Henry*, 3d Dist. No. 8-11-04, 2012-Ohio-655, ¶ 31. When we consider manifest weight arguments, we "review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof." *Henderson v. Henderson,* 3d Dist. No. 10-01-17, 2002-Ohio-2720 ¶ 28, citing *Howard v. Howard*, Montgomery App. No. 16542 (Mar. 20, 1998). Accordingly, the trial court's judgment will not be reversed if the decision is supported by some competent, credible evidence. *Eggeman v. Eggeman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶ 14, citing *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10.

*Chris' First Assignment of Error – Debt Division*

{**¶18**} In his first assignment of error, Chris complains that it was not equitable to divide the $26,919.12 credit card debt equally between the parties

because he claims that Wendy had complete control over the credit cards and she used them solely to finance purchases of products and to pay expenses for her Mary Kay cosmetic business. Chris represents that their tax records show that her business never showed a profit and that it lost money every year. He maintains that the marriage never derived any benefit from her activities and there was no evidence that she ever used any of her Mary Kay commissions to support the family. Therefore, he asserts that it was inequitable to classify the debt as a marital debt to be allocated equally between the parties.

{¶19} Marital property includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. See R.C. 3105.171(A)(3)(a). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009–Ohio–6864, ¶ 15 (3d Dist.). The trial court's characterization of property as separate or marital is a mixed question of law and fact, which must be supported by sufficient credible evidence. *Kelly v. Kelly*, 111 Ohio App.3d 641, 642 (1st Dist.1996).

{¶20} The property to be divided in a divorce proceeding includes not only the assets owned by the parties, but also any debts incurred by the parties. *Marrero v. Marrero*, 9th Dist. No. 02CA008057, 2002-Ohio-4862, ¶ 43. Although Ohio's divorce statutes do not specifically articulate debt as an element of marital

and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well. *Vonderhaar-Ketron v. Ketron*, 5th Dist. No. 10 CA 22, 2010-Ohio-6593, ¶ 34. Therefore, the same principles that govern the analysis of the disposition of assets also direct the analysis of the disposition of the parties' debts. *Schiesswohl v. Schiesswohl*, 9th Dist. No. 21629, 2004-Ohio-1615, 46.

{¶21} Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Ketchum v. Ketchum*, 7th Dist. No.2001 CO60, 2003–Ohio–2559, ¶ 47, citing Turner, Equitable Distribution of Property (2 Ed.1994, Supp.2002) 455, Section 6.29. Debts incurred during the marriage are presumed to be marital unless it can be proved that they are not. *Vergitz v. Vergitz*, 7th Dist. No. 05JE52, 2007–Ohio–1395, ¶ 12, citing *Knox v. Knox*, 7th Dist. No. 04JE24, 2006–Ohio–1154, ¶ 25–26. The party seeking to establish a debt as separate rather than marital bears the burden of proving this to the trial court by a preponderance of the evidence. *Id.*, citing *Hurte v. Hurte*, 164 Ohio App.3d 446, 842 N.E.2d 1058, 2005–Ohio–5967, ¶ 21 (4th Dist.); *Lucas v. Lucas,* 7th Dist. No. 11 NO 382, 2011-Ohio-6411, ¶ 33; *Kranz v. Kranz*, 12th Dist. No. CA2008-04-054, 2009-Ohio-2451, ¶ 24.

{¶22} Wendy's Mary Kay business activities took place during the marriage. As such, all income and all losses from her business venture are

presumed to be marital. Just because the business may have suffered a loss, does not mean that its debt is not marital. Furthermore, testimony from Wendy indicated that the debt that was accumulated was not necessarily from losses from operating her business but from utilizing the money she obtained through the business to pay for household and family expenses. Chris did not present any evidence that would satisfy his burden to prove that the debt should have been classified as Wendy's separate debt.

{¶23} The trial court heard the testimony of the witnesses and examined the exhibits and depositions of the parties. The trial court stated that it "accepts the testimony of [Wendy] as to the use of the credit cards and Mary Kay commissions to the benefit of her family." (J.E., ¶ 9) Although it acknowledged that Wendy may have been a "poor business woman," it found that she was not using the credit cards for a devious or selfish purpose." (*Id.*) It is for the trier of fact to determine the credibility of the witnesses based on the evidence before it, and the trial court found Wendy's testimony to be more credible than Chris' testimony.

{¶24} There was credible evidence in the record to support the trial court's determination that the credit card debt was marital, and the trial court did not abuse its discretion when it divided that debt equally between the parties. Chris' first assignment of error is overruled.

*Chris' Second Assignment of Error – Corporate Property Division*

{¶25} In his second assignment of error, Chris asserts that the trial court erred by arbitrarily setting aside the corporate ownership and declaring the assets of the corporation to be marital property. He states that the corporation was a separate entity, and that the value of the corporation should have been determined by a proper expert valuation utilizing an accepted method for valuing a corporation. Chris contends that no proper valuation was given to the business and that it was improper for the trial court to deem the assets of the corporation as marital property subject to division.

{¶26} When dividing property in domestic cases, the trial court is vested with broad discretion, which will be upheld absent an abuse of discretion. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 1998-Ohio-403. R.C. 3105.171(C)(1) mandates that a trial court divide marital property equally, or, if an equal division is inequitable, that the court divide the marital property equitably. To comply with that duty, a trial court must generally assign and consider the values of marital assets in order to equitably divide those assets. *Beagle v. Beagle*, 10th Dist. No. 07AP–494, 2008–Ohio–764, ¶ 41; *Hightower v. Hightower*, 10th Dist. No. 02AP–37, 2002–Ohio–5488, ¶ 22. Ohio courts have recognized several different methods for valuing a business. *Kuper v. Halbach*, 10th Dist. No. 09AP-1099, 2010-Ohio-3020, ¶ 13. When valuing a business, a trial court is not required

to use a particular valuation method nor is it precluded from using any method. *Id*.

**{¶27}** The valuation of property in a divorce case is a question of fact. *Herron v. Herron*, 3d Dist. No. 1-04-23, 2004-Ohio-5765, ¶ 23, citing *Covert v. Covert*, 4th Dist. No. 03CA778, 2004-Ohio-3534, ¶ 6. Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence. *Id*.

**{¶28}** The trial court determined that the business was marital property, and determined the valuation of the business to the best of its ability based upon the limited information that it had before it. The trial court found:

> The Court does not accept [Chris's] premise that some property is owned by the corporation and should be excluded as marital property or that the Court has no jurisdiction over those assets. * * * He is the sole shareholder and the corporation only exists to give him a tax break with regard to tax liability that he has on money that is earned. The corporation, in one form or another, has existed throughout the parties' marriage. The court, therefore considers the assets of the corporation as assets of the parties subject to an equitable division just as if it were a sole proprietorship.

(Oct. 3, 2011 J.E., ¶ 8)

**{¶29}** It was uncontroverted that Chris formed the corporations that existed after the date of the parties' marriage in 1992. Although Chris did conduct a cabinet business prior to the marriage, there was no definitive evidence that assets

were transferred to the corporation or that the corporation's current value was in any way derived from the pre-marital business. Since the creation and operation of the corporation occurred during the marriage, and there were no other outside shareholders involved, the trial court did not err in finding that the entire value of the corporation was marital property, subject to an equitable division between the parties.

{¶30} Next we need to determine whether or not the trial court correctly valued the corporation. On appeal, Chris incorrectly argues that "the court arbitrarily determined that it was essentially setting aside the corporation ownership and declaring any assets the corporation had to be marital property." (Appellate Br., p. 13) The trial court did not set aside any corporate ownership, but merely valued the assets of the corporation as if it were a sole proprietorship because, in essence, that is how it was actually being operated. Chris casually moved his various business ventures back and forth between the corporate entities he had set up, with little regard for what corporate name a business was operating under. Confusion was caused because Chris never bothered to change the name of the corporations on his bank accounts and Quick Book accounts, even when a corporation ceased to exist. At the time of the divorce, Chris was essentially operating a cabinet making business, which he himself had stated had no value

other the value of the equipment. (Deposition of Chris Schwarck, pp. 21-24, admitted as Plaintiff's Exhibits 1 and 2)

> [Chris] is the sole owner of the stock in the Subchapter S corporations and neither party had an expert testify as to the value of any business or as to the value of any stock held by [Chris]. Due to the nature of [Chris's] business, the Court finds the Subchapter S corporation and the shares of stock held by [Chris] to have no value beyond equipment and inventory. The Court can only make findings based upon evidence given to it by the parties.

(J.E., ¶ 4)

{¶31} The trial court's ruling allowed the business to remain intact, and allowed Chris to maintain his business as he had been operating it, while still giving Wendy financial credit for her marital share of this property. This is precisely the manner that the Eleventh District Court of Appeals ordered the trial court to employ in order to effectuate an equitable distribution while keeping the business intact, if at all possible. *See Humphrey v. Humphrey*, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, ¶ 41.

{¶32} The trial court had no expert testimony to utilize for valuing the stock and utilized the only information it had before it: the testimony of Chris and the valuation of the business property and inventory that was done by the certified appraiser. While this might not be the best method to utilize to value a Subchapter S corporation, based on the facts in this case, the casual manner in which the business was operated, the lack of viable expert testimony as to the value of the

business, and the limited information provided by the parties, we cannot say that the trial court abused its discretion. The second assignment of error is overruled.

*Chris' Third Assignment of Error – "Distributive Award"*

{¶33} In his final assignment of error, Chris complains that the trial court erred in ordering a lump sum "distributive award" of $41,746.13 to be paid in ninety days. Chris complains that he does not have any liquid assets with which to pay this award and will be forced to sell some of the assets of the corporation, which will result in a negative tax impact. He asserts that the trial court failed to take into consideration the factors in R.C. 3105.171(F), some of which include: the assets and liabilities of the parties; the liquidity of the property to be distributed; the tax consequences of the property division; and any other factor the court finds relevant. He contends that being ordered to pay a lump sum within ninety days is burdensome and impossible.

{¶34} Pursuant to R.C. 3105.171(A)(1), a "distributive award" means "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code." R.C. 3105.171(E)(2) provides that the court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the

court determines that a division of the marital property in kind or in money would be impractical or burdensome. *Ruttmann v. Ruttmann*, 3d Dist. No. 16-95-2, 1995 WL 577822. Moreover, the court must consider the factors enumerated in R.C. 3105.171(F) in deciding whether or not to order a distributive award. *Guziak v. Guziak*, 80 Ohio App.3d 805, 813 (9th Dist.1992).

{¶35} Chris is mistaken when he states that the trial court erred in ordering a distributive award, because no such award was made. Here, the trial court determined that all of the parties' assets were *marital* assets and ordered a division of the marital assets to equalize the division of the marital property between the parties. The trial court did not make a "distributive award," because there was no award of *separate property* involved. *See O'Rourke v. O'Rourke*, 4th Dist. No. 08CA3253, 2010-Ohio-1243, ¶ 19 (the court's award was not a distributive award made from the husband's separate property, but an award to equalize the division of the marital property.)

{¶36} Furthermore, Chris is not necessarily required to sell the corporation's assets and suffer tax consequences. If Chris fails to pay the amount due within 90 days, he will be required to pay interest on the outstanding amount due. Wendy is currently paying interest on the credit card debt, so we do not see how that ruling is inequitable to Chris. And, while it may be difficult for Chris to

-18-

refinance the property or come up with the money he was ordered to pay, it is not an impossibility.

**{¶37}** Chris was awarded the bulk of the parties' assets in order to allow him to keep his business intact. It was within the trial court's discretion to award a lump sum equalization of the marital assets, even if it might cause some hardships, and especially when there were insufficient liquid assets to otherwise effectuate an equitable distribution of property between the parties. The third assignment of error is overruled.

*Wendy's Cross-Appeal – Denial of Spousal Support*

**{¶38}** In her cross appeal, Wendy sets forth a single assignment of error asserting that the trial court erred when it failed to award her spousal support. She alleges that Chris' income was considerably higher than what was determined by the trial court, which utilized his income tax returns to calculate his average annual income. Wendy cites to several cases where courts have found that a spouse who is the sole shareholder of a business may sometimes engage in "creative accounting" in order to "cloak net income." *See e.g.*, *Strasburg v. Strasburg*, 3d Dist. No. 2-10-12, 2010-Oho-3672, ¶ 28. Wendy claims that the bank deposit records from 2008 to 2010 (Plaintiff's Exhibit 3) show deposits greatly in excess of his reported income during that period, and that there was a lack of proof as to expenses to off-set that income.

{¶39} R.C. 3105.18 governs the trial court's award of spousal support and requires the court to consider fourteen factors set forth in R.C. 3105.18(C)(1) when determining whether spousal support is "appropriate and reasonable" and when determining the nature, amount, terms of payment, and duration of the support. *Strasburg*, 2010-Ohio-3672, at ¶ 26. Trial courts are granted broad discretion concerning awards of spousal support. *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 706 (2d Dist.1996); *Siekfer v. Siekfer*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶ 15. *See also, Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). Their orders will not be reversed on appeal absent an abuse of that discretion. *Id.*

{¶40} The record demonstrates that the trial court considered the appropriate factors and found that spousal support was not warranted because the parties had similar educations, similar earning capacities, were in reasonably good health, and had similar living arrangements. Additionally, the trial court noted that the parties had lived separately for almost two and one-half years before filing for divorce, indicating that neither was relying on the other for support. (J.E., ¶ 5) However, Wendy claims that the trial court made an erroneous decision because it failed to consider "undeclared income."

{¶41} The trial court did address Wendy's arguments in its judgment entry, stating:

> [Wendy] has attempted to show that [Chris] has earned more income than he has reported. In order to do that, [Wendy] has presented the

> bank account statements of [Chris] from his various corporations and personal accounts. [Wendy] presented no testimony from a forensic accountant to support her position. A simple examination of the records is not sufficient to support [Wendy's] position.

(J.E., ¶ 4). The record shows that the trial court carefully considered Wendy's arguments, but that she failed to provide sufficient evidence to prove her allegations.

{¶42} Although the parties' presented voluminous financial records as exhibits, including years of bank statements, Quick Book records, and tax returns, there was little in the way of organization or explanation as to their significance. Furthermore, the record keeping was poor in several respects, such that Chris did not even change the names of his bank accounts or computer records when he changed his businesses and he operated different businesses out of one account. Although Wendy is correct in stating that the total deposits are considerably higher than the total income reported, there are many reasonable explanations for the difference. Monthly bank statements often showed that checks paid out in any

given month were nearly equal to, or even in excess of the deposits.[3] The tax returns listed the gross income, but then also subtracted the cost of goods sold, depreciation, costs for utilities, legitimate business expenses, etc. There was no evidence that the tax returns were inaccurate or fraudulent. While the record-keeping may have been careless, we cannot dispute the trial court's conclusion that there was no definitive evidence of financial misconduct that would warrant imputing additional income to Chris.[4]

{¶43} Based on the above, we do not find any error in the trial court's determination that spousal support was not appropriate. Wendy's assignment of error on cross-appeal is overruled.

{¶44} Having found no error prejudicial to the Appellant or Cross-Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**

---

[3] Copies or details of the check payments were not provided. However, Plaintiff's Exhibit 33 provided over 40 pages of "Expenses by Vendor Detail" from 2004 through 2010 for the various entities. Again, without expert testimony to compare the deposits to the disbursements, we cannot come to any conclusion as to the significance of these records.

[4] The trial court stated that, "[i]n listening to the parties, the court is also convinced that [Chris] does not possess the intelligence required to under-report income to the extent as alleged by [Wendy]. If there was an under-reporting of income, it was as a result of poor record keeping skills and mistakes or carelessness. (J.E., ¶ 4)