[Cite as *Fogt v. Fogt*, 2019-Ohio-1403.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY

SARA FOGT,

     PLAINTIFF-APPELLANT,          CASE NO.  4-18-10

     v.

JEFFREY C. FOGT,                 O P I N I O N

     DEFENDANT-APPELLEE.

Appeal from Defiance County Common Pleas Court
Domestic Relations Division
Trial Court No. 13-DR-42551

Judgment Affirmed

Date of Decision:   April 15, 2019

APPEARANCES:

    *Charles E. Bloom* for Appellant

    *John S. Shaffer* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, Sara Fogt ("Sara"), appeals the October 26, 2018 judgment of the Defiance County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm.

{¶2} Sara and defendant-appellee, Jeffrey Fogt ("Jeffrey"), were married on October 31, 1998. (*See* Doc. Nos. 1, 32). Nearly 15 years later, on September 12, 2013, Sara filed a complaint in the trial court requesting a divorce from Jeffrey. (Doc. No. 1). Jeffrey filed his answer to Sara's complaint on January 29, 2016. (Doc. No. 32).

{¶3} The final hearing in the matter commenced before the magistrate on January 8, 2016. (*See* Doc. Nos. 43, 44). Additional hearings were conducted before the magistrate on February 19, April 29, July 8, and September 23, 2016. (*See* Doc. Nos. 43, 44). On November 23, 2016, Sara filed written closing arguments. (Doc. No. 43). That same day, Jeffrey filed proposed findings of fact and conclusions of law. (Doc. No. 44). On December 9, 2016, Sara filed her response to Jeffrey's proposed findings of fact and conclusions of law. (Doc. No. 45). That same day, Jeffrey filed his response to Sara's written closing arguments. (Doc. No. 46).

{¶4} On April 10, 2017, the magistrate issued his decision recommending that a divorce be granted. (Doc. No. 54). Relevant to this appeal, the magistrate

also recommended that the trial court make the following orders with respect to contested assets and debts: that a bank account, First Federal #8283, valued at $80,531 be divided equally between Sara and Jeffrey and that Jeffrey assume sole responsibility for the payment of interest and principal on a $90,000 loan the parties received from Jeffrey's parents in July 2000. (*Id.*). In addition, the magistrate recommended that the trial court order Jeffrey to pay Sara spousal support in the sum of $4,400 per month for 66 months. (*Id.*).

{¶5} On April 24, 2017, Jeffrey filed objections to the magistrate's decision. (Doc. No. 55). First, Jeffrey objected to the magistrate's recommended division of First Federal #8283. (*Id.*). He argued that the value of First Federal #8283 should be reduced by $16,249.73 prior to division to account for two payments he made from the account in January 2016: $12,000 toward estimated 2015 federal income tax liability and $4,249.73 toward real estate taxes for calendar year 2015 payable in calendar year 2016. (*Id.*). In addition, Jeffrey argued that although the magistrate found that the $90,000 loan was essentially a marital debt, the magistrate failed to assign responsibility for the debt equally between himself and Sara. (*Id.*). Thus, Jeffrey argued that he should receive credit against other marital assets for one-half of the $90,000 obligation. (*Id.*). Finally, Jeffrey argued that both the amount of spousal support owed per month to Sara and the length of the term of spousal support should be reduced because the magistrate incorrectly determined the

duration of the marriage and because the magistrate should have given him credit for the three and a half years that he supported Sara from the date of the filing of her complaint for divorce until the date of the magistrate's decision. (*Id.*). On May 3, 2017, Sara filed her response to Jeffrey's objections to the magistrate's decision. (Doc. No. 56).

{¶6} On May 22, 2017, Jeffrey requested that the trial court grant him an additional 30 days to obtain and file copies of the transcripts of the hearings held before the magistrate. (Doc. No. 58). On June 14, 2017, the trial court granted Jeffrey's motion and gave him until June 24, 2017 to file the transcripts. (Doc. No. 59). On June 22, 2017, Jeffrey requested that the trial court grant him an additional extension of 30 days to file the transcripts. (Doc. No. 60). On June 26, 2017, the trial court granted Jeffrey's motion and gave him an additional 30 days until July 24, 2017 to file the transcripts. (Doc. No. 61). However, inexplicably, Jeffrey failed to file any transcripts in the trial court.

{¶7} On July 25, 2017, Sara filed a motion to dismiss Jeffrey's objections based on Jeffrey's failure to support his objections with transcripts of the hearings conducted before the magistrate. (Doc. No. 62). On August 9, 2017, the trial court denied Sara's motion to dismiss. (Doc. No. 63).

{¶8} On May 9, 2018, the trial court sustained Jeffrey's objections to the magistrate's decision. (Doc. No. 65). First, the trial court ordered that the balance

of First Federal #8283, "$80,531.00[,] should be reduced by the sum of $16,249.73 prior to division" between Sara and Jeffrey. (*Id.*). In addition, with respect to the $90,000 loan, the trial court concluded that Jeffrey "must be credited with one-half of the amount of the mar[ital] debt in the overall asset division." (*Id.*). Finally, although the trial court did not alter the amount of spousal support owed per month by Jeffrey to Sara, it reduced the term of spousal support from 66 months to 54 months. (*Id.*).

{**¶9**} On October 26, 2018, the trial court filed its final judgment entry of divorce, which, among other things, granted Sara and Jeffrey a divorce from each other and incorporated the modifications the trial court made to the magistrate's decision in the trial court's May 9, 2018 judgment. (Doc. No. 67).

{**¶10**} On November 19, 2018, Sara filed a notice of appeal. (Doc. No. 68). She raises four assignments of error for our review. We will begin by addressing Sara's first assignment of error, followed by Sara's second, third, and fourth assignments of error, which we will address together.

### Assignment of Error No. I

**The trial court erred in failing to dismiss Appellee's objections when the appellee failed to file a transcript of the proceedings to support his objections.**

{**¶11**} In her first assignment of error, Sara argues that the trial court erred by denying her motion to dismiss Jeffrey's objections to the magistrate's decision.

Specifically, Sara argues that the trial court could not have considered Jeffrey's objections without transcripts of the hearings conducted before the magistrate. (Appellant's Brief at 11-12). Therefore, Sara argues, the trial court should have dismissed Jeffrey's objections without further consideration.

{¶12} "Civ.R. 53(D) governs proceedings in matters referred to magistrates." *Williams v. Ormsby*, 9th Dist. Medina No. 09CA0080-M, 2010-Ohio-3666, ¶ 9. Civ.R. 53(D) provides in relevant part:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

Civ.R. 53(D)(3)(b)(iii). "The duty to provide a transcript to the trial court rests with the person objecting to the magistrate's decision." *Slepsky v. Slepsky*, 11th Dist.

Lake No. 2016-L-032, 2016-Ohio-8429, ¶ 20, citing *In re O'Neal*, 11th Dist. Ashtabula No. 99-A-0022, 2000 WL 1738366, *7 (Nov. 24, 2000).

**{¶13}** "Where a party fails * * * to file a transcript of the evidence presented at the magistrate's hearing, the trial court, when ruling on the objections, is required to accept the magistrate's findings of fact and to review the magistrate's conclusions of law based on the factual findings." *Nieto v. Marcellino*, 11th Dist. Geauga No. 2017-G-0146, 2018-Ohio-4952, ¶ 15, citing *Slepsky* at ¶ 20, citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995) and *Saipin v. Coy*, 9th Dist. Summit No. 21800, 2004-Ohio-2670, ¶ 9; *Long v. Long*, 3d Dist. Defiance No. 4-02-22, 2003-Ohio-854, ¶ 10 ("[A]bsent a transcript or appropriate affidavit as provided in the rule, a trial court is limited to an examination of the magistrate's conclusions of law and recommendations only in light of the accompanying findings of fact, unless the trial court elects to hold further hearings."), citing *Wade v. Wade*, 113 Ohio App.3d 414, 418 (11th Dist.1996). "'Where the failure to provide the relevant portions of the transcript or suitable alternative is *clear* on the face of the submissions, the trial court cannot then address the merits of that factual objection because the objecting party, whether through inadvertence or bad faith, has not provided all of the materials needed for the review of that objection.'" (Emphasis sic.) *Nieto* at ¶ 15, quoting *Wade* at 418.

**{¶14}** Here, it is undisputed that Jeffrey failed to provide the trial court with transcripts of the hearings conducted before the magistrate. As a result, the trial court was bound to accept the magistrate's findings of fact. *Nieto* at ¶ 15; *Long* at ¶ 10. However, while the trial court was required to accept the magistrate's findings of fact, it was nevertheless permitted to consider Jeffrey's objections to the extent that Jeffrey argued that the magistrate erred in his interpretation of the law or in the application of the law to the facts as found. Indeed, the trial court had an obligation to determine whether the magistrate correctly interpreted and applied the law prior to adopting the magistrate's decision and that obligation would have been the same irrespective of whether Jeffrey filed objections to the magistrate's decision. *See* Civ.R. 53(D)(4)(c) ("If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law * * * evident on the face of the magistrate's decision."); Civ.R. 53(D)(4)(d) ("In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has * * * appropriately applied the law."). Therefore, because Jeffrey's objections related to the application of the law to the magistrate's findings of fact and because the trial court had an independent responsibility to review the magistrate's application of the law, the trial court did not err by denying Sara's motion to dismiss Jeffrey's objections.

**{¶15}** Sara's first assignment of error is overruled.

## Assignment of Error No. II

**The trial court's decision is in error and is not supported by the manifest weight of the evidence as found in the complete record when contrary to the magistrate's findings of fact the trial court ruled that the value of the Federal bank account #8283 should be reduced by the sum of $16,249.73 to account for payments for the estimated income and real estate taxes from this account.**

## Assignment of Error No. III

**The trial court's decision is in error and is not supported by the manifest weight of the evidence as found in the complete record when contrary to the magistrate's findings of fact the trial court ruled that the $90,000 debt is a marital obligation.**

## Assignment of Error No. IV

**The trial court's decision is in error and is not supported by the manifest weight of the evidence as found in the complete record when contrary to the magistrate's findings of fact it ruled that the appellant's term of spousal support should be reduced from 66 months to a period of 54 months.**

{¶16} Each of Sara's remaining assignments of error take issue with the trial court's modification of certain aspects of the magistrate's decision. In her second assignment of error, Sara argues that by reducing the balance of First Federal #8283 by $16,249.73 prior to division, the trial court "abused its discretion by ignoring the factual findings of the Magistrate, assuming facts not in evidence, utilizing a different valuation date for the division of this account, making its own factual finding, and rejecting the Magistrate's Conclusion of Law." (Appellant's Brief at 14). In her third assignment of error, Sara argues that the trial court's decision to

assess half of the $90,000 loan against her share of the marital property was an abuse of discretion because the trial court reached this conclusion by rendering a factual finding not made by the magistrate—that the loan is a legitimate marital debt. (*Id.* at 16-21). Finally, in her fourth assignment of error, Sara argues that the trial court abused its discretion by reducing the term of spousal support from 66 months to 54 months because, in doing so, the trial court "reject[ed] [the magistrate's] factual findings, and * * * ma[de] other specific findings when the evidence and testimony presented to the Magistrate upon which it was based was never provided." (*Id.* at 22); (*Id.* at 21-25).

{¶17} Generally, "[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard." *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-1726, ¶ 31, citing *Figel v. Figel*, 3d Dist. Mercer No. 10-08-14, 2009-Ohio-1659, ¶ 9, citing *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, ¶ 7 (8th Dist.). However, "'[o]n appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision.'" *In re Estate of Stanford*, 2d Dist. Montgomery No. 23249, 2010-Ohio-569, ¶ 22, quoting *In re Estate of Lucas*, 2d Dist. Montgomery No. 23088, 2009-Ohio-6392, ¶ 32, citing *Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶

5-6. Thus, we consider only whether the trial court abused its discretion by modifying the magistrate's conclusions of law in light of the magistrate's findings of fact. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} Sara's second and third assignments of error concern the trial court's modification of the portions of the magistrate's decision regarding the division of First Federal #8283 and allocation of responsibility for payment of the $90,000 loan. Thus, Sara's second and third assignments of error relate to the division of marital assets and liabilities. "In awarding property to the parties to a divorce proceeding, the trial court must first determine whether property is marital or separate." *Siferd v. Siferd*, 3d Dist. Hancock No. 5-17-04, 2017-Ohio-8624, ¶ 25, citing R.C. 3105.171(B). Marital property includes all real and personal property that is owned by either or both of the spouses and all interest that either or both of the spouses has in any real or personal property, and "that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i)-(ii). "Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 19, citing *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 13 (3d Dist.).

**{¶19}** "'Although Ohio's divorce statutes do not specifically articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well.'" *Siferd* at ¶ 26, quoting *Schwarck* at ¶ 20, citing *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010-Ohio-6593, ¶ 34. "'The property to be divided in a divorce proceeding includes not only the assets owned by the parties but also any debts incurred by the parties.'" *Id.*, quoting *Forman v. Forman*, 3d Dist. Marion No. 9-13-67, 2014-Ohio-3545, ¶ 31, citing *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 43. Like property acquired during a marriage, debts incurred during a marriage are presumptively marital debts unless it can be proved that they are not. *Schwarck* at ¶ 21, citing *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05JE52, 2007-Ohio-1395, ¶ 12, citing *Knox v. Knox*, 7th Dist. Jefferson No. 04JE24, 2006-Ohio-1154, ¶ 25-26.

**{¶20}** Generally, trial courts should divide marital assets and debts equally between the spouses. R.C. 3105.171(C)(1). However, where equal division of the marital assets and debts would be inequitable, "the trial court must 'divide the marital * * * property equitably between the spouses * * *.'" *Siferd* at ¶ 25, quoting R.C. 3105.171(B). "'Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding."'" *Id.* at ¶ 27, quoting *Collins v.*

*Collins*, 3d Dist. Marion No. 9-10-53, 2011-Ohio-2339, ¶ 28, quoting *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus.

**{¶21}** We turn first to the trial court's modification of the magistrate's decision as to the division of First Federal #8283. In his decision, the magistrate made the following observations and findings relevant to the valuation and division of First Federal #8283:

> The Court notes that the parties previously agreed to divide up the uncontested financial accounts as of January 10, 2016. The balance [of First Federal #8283] on that date was about $80,531. * * * [Sara] * * * objected to large payments [Jeffrey] made in January 2016 from the account for estimated taxes ($12,000) and real estate taxes ($4,247.76). [Sara] stated that these payments up until then had been made out of the company account of Professional Vision Services, LLC which by agreement was awarded to [Jeffrey] and that the sole purpose of paying them now out of the personal account was to reduce the amount of her share.
>
> The court finds that [First Federal #8283] should be valued as of January 10, 2016 at $80,531 and split equaly * * *. The payments [Jeffrey] made from [First Federal #8283] in January [2016] were atypical and the only reason they were made from [First Federal

-13-

#8283] instead of the historical account was to reduce the amount of

funds paid to [Sara].

(Doc. No. 54). Later in his decision, the magistrate noted that the tax payments made from First Federal #8283 "were otherwise proper being toward legitimate marital debt." (*Id.*).

{¶22} In its judgment sustaining Jeffrey's objections and modifying the magistrate's decision, the trial court concluded as follows:

The first issue raised by [Jeffrey's] objection relates to the division of [First Federal #8283]. The Magistrate determined the value of this marital asset to be $80,531. [Jeffrey] contends that the value of this marital balance ought to have been reduced [because of]: 1) [a] $12,000 estimated tax payment to the Internal Revenue Service made January 13, 2016 (last quarter estimate for calendar year 2015); [and] 2) $4,249.73 being a payment for Real Estate taxes for calendar year 2015, payable in 2016 and made January 13, 2016 * * *.

[K]nowing that the Court is bound by [the] factual determinations made by the Magistrate, the Court must determine whether the facts stated by the Magistrate warrant the conclusions reached. It appears * * * that, notwithstanding the prior practice of the parties, the payments for both estimated income tax and real estate taxes should

properly be subtracted from the balance of [First Federal #8283] prior to division.  As noted by the Magistrate, these are obviously specific marital expenses and the fact that, in earlier years, a different source of funding for these payments [was used] does not change their character. * * *

Regarding [First Federal #8283] * * *, based upon the foregoing, the value of the account[,] $80,531.00[,] should be reduced by the sum of $16,249.73 prior to division.

(Doc. No. 65).

{¶23} We conclude that the trial court did not abuse its discretion by modifying the magistrate's decision with respect to the balance of First Federal #8283.  Contrary to Sara's assertion, in ordering that the balance of First Federal #8283 be reduced prior to division, the trial court did not change any of the magistrate's findings of fact or make any additional findings of fact.  The magistrate found that First Federal #8283 had a balance of $80,531 in January 2016, and it is undisputed that First Federal #8283 is a marital asset.  Furthermore, the magistrate found that two payments totaling $16,247.76 were made from First Federal #8283 in January 2016, and the magistrate found that these payments were made in order to discharge legitimate marital debts.  Except as discussed in the next paragraph, these findings remained intact in the trial court's modification of the magistrate's

decision. However, unlike the magistrate, the trial court ensured that the property division conformed to the general legal rule that marital assets and debts are to be divided equally between the spouses. That is, the trial court allocated responsibility for the payment of legitimate marital debts equally between Sara and Jeffrey as it is generally required to do. The trial court's modifications were not unreasonable, arbitrary, or unconscionable. Thus, the trial court did not abuse its discretion.

{¶24} However, we do note a discrepancy between the amount found by the magistrate to have been paid from First Federal #8283 in January 2016 and the amount that the trial court ultimately deducted from the balance of First Federal #8283. The magistrate found that two payments were made in January 2016—one for $12,000 and one for $4,247.76—totaling $16,247.76. (Doc. No. 54). Yet, the trial court ordered that the balance of First Federal #8283 be reduced by $16,249.73 prior to division. (Doc. No. 65). While the magistrate's findings support reducing the balance of First Federal #8283 by $16,247.76, the magistrate's decision does not support reducing the balance of First Federal #8283 by the amount ordered by the trial court. However, to remand for $1.97 is neither judicially economic nor financially advantageous to the parties and accordingly, it will be considered harmless error.

{¶25} Next, we consider whether the trial court abused its discretion by modifying the magistrate's decision so that half of the $90,000 loan would be

Case No. 4-18-10

assessed against Sara's share of the total marital property. With respect to the $90,000 loan, the magistrate made the following findings and conclusions:

[T]he parties on July 20, 2000 borrowed $90,000 from [Jeffrey's] parents and signed a note for that amount. No periodic principle [sic] payments were required except a balloon payment on July 20, 2010. However, monthly interest payments were required at 8%. [Jeffrey] signed his name "dba Professional Vision services." The purpose of the loan was not clearly stated but appeared to be business related. No documents were provided showing the receipt of and deposit of the money and [Sara] could not recall ever seeing the check or any funds deposited in the company account. * * * On July 20, 2010, a new note was signed continuing the debt for another ten years. This time the interest rate was reduced to 4%.

* * *

The evidence indicates that the interest payments required for the debt were paid through the books and accounts of Professional Vision Services, LLC of which [Jeffrey] was the sole member. The account was treated apparently as a payable by the LLC to [Jeffrey]. All interest payments required by the notes have been paid by the company. * * * [Jeffrey] was able to produce a document * * * which

he states shows a $60,000 payment to State Bank on a loan he took out to purchase the practice of Dr. Brunotte. [Jeffrey] indicated that the source of the $60,000 payment was the loan from his parents. * * * [T]he evidence suggests logically that the money did come from his parents and was used for business purposes. Exhibit 7, shows a purchase agreement between Dr. Brunotte and [Jeffrey] for the sale of Brunotte's practice in which [Jeffrey] agreed to pay him $160,000 at the closing which was scheduled for May 10, 2000. Exhibit U shows that [Jeffrey] secured a loan from the State Bank and Trust Co. on May 9, 2000 in the amount of $160,000 one day before the closing. The payment of $60,000 shown on Exhibit U, was received on July 26, 2000, six days after the signing of the note and likely receipt of the $90,000. Thus, $60,000 of the funds are accounted for and business related but not the remaining $30,000.

[Jeffrey] essentially failed to show where the remaining thirty thousand dollars is being held or, if it no longer exists, when and for what use was the money put. * * * [I]t is reasonable to find that [Jeffrey] and his business are responsible for [the other $30,000] and charged with knowledge of [its] existence. * * *

Under the circumstances, the Court finds that the debt despite being somewhat impractical is legitimate. [Jeffrey] is to be solely responsible for the payment of interest and principle [sic] on the debt and hold [Sara] harmless.

(Doc. No. 54).

**{¶26}** In modifying the magistrate's decision as to the allocation of responsibility for the $90,000 loan, the trial court concluded:

In the Magistrate's Decision, the Magistrate effectively describes [the $90,000 loan] as a legitimate marital debt. The Magistrate makes payment of that debt and interest the responsibility of [Jeffrey]. Notwithstanding this determination that the $90,000 debt is in fact a marital obligation, the Magistrate failed to credit [Jeffrey] for payment of one-half of this marital debt against other marital assets. Again, being bound by the factual determination of the Magistrate, the Court determines from the Magistrate's expression of facts that this $90,000 debt is, in fact, properly considered a marital debt. In assigning responsibility for payment of this marital debt to [Jeffrey], [Jeffrey] must be credited with one-half of the amount of the marital debt in the overall asset division.

(Doc. No. 65).

{¶27} We conclude that the trial court did not abuse its discretion by modifying the magistrate's decision in order to hold Sara responsible for half of the $90,000 loan. In order to hold Sara responsible for half of the $90,000 loan, the $90,000 loan must be a marital debt. Sara asserts that the magistrate classified the $90,000 loan as a "business debt" of Jeffrey's business rather than as a marital debt and thus appropriately concluded that Jeffrey's business and Jeffrey himself should be responsible for the whole loan. (Appellant's Brief at 19). Sara further contends that the trial court altered the magistrate's findings—that is, the trial court concluded that the $90,000 loan is a marital debt instead of preserving the magistrate's conclusion that the loan is a business debt. (*See id.*). Thus, Sara argues, the trial court abused its discretion by "reclassifying" the $90,000 loan as a marital debt in order to hold her responsible for half of the obligation without the benefit of the transcripts of the hearings.

{¶28} Sara's argument is without merit. Contrary to Sara's argument, in concluding that the $90,000 loan is a marital obligation and assigning to Sara and Jeffrey equal responsibility for its payment, the trial court did not disturb the magistrate's findings of fact. Instead, to the extent that the magistrate concluded that the $90,000 loan is solely a debt of Jeffrey's business, the trial court determined that the magistrate's findings of fact did not support that conclusion. Thus, the trial court merely reached a different legal conclusion based on the facts as found by the

magistrate and that conclusion is supported by the magistrate's findings of fact. First, the note evidencing the $90,000 loan was signed on July 20, 2000, which was during the course of the parties' marriage. (Doc. No. 54). Although Jeffrey signed the note "dba Professional Vision Services," Jeffrey was not the only signatory on the note; Sara also signed the note. (*See id.*). Moreover, the magistrate found that $60,000 of the $90,000 loan was spent in connection with the acquisition of another doctor's practice. (*Id.*). As at least two-thirds of the proceeds of the loan were used to expand Jeffrey's business, which was the principal source of income during the marriage, Sara and Jeffrey derived joint personal benefits from the proceeds of the loan. Furthermore, the fact that the interest payments for the loan were paid through Professional Vision Services's accounts does not demand a conclusion that the debt is strictly an obligation of Jeffrey's business. In relation to the division of First Federal #8283, the magistrate noted that the parties had an established practice of paying personal income and real estate taxes out of the business's accounts. (*See id.*). Thus, because Sara and Jeffrey had a practice of paying marital expenses out of business accounts, the payment of interest payments from business accounts is not determinative of whether the loan is solely a business obligation.

{¶29} In sum, the magistrate found that Sara co-signed a loan during the course of her marriage to Jeffrey and that the bulk of the proceeds of the loan were put toward the expansion and development of Jeffrey's business—the principal

-21-

source of income during the couple's marriage. "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Schwarck*, 2012-Ohio-3902, at ¶ 21, citing *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001 CO 60, 2003-Ohio-2559, ¶ 47, citing Turner, *Equitable Division of Property*, Section 6.29, at 455 (2d Ed. Rev. 2002). Because the $90,000 loan was incurred during the marriage for the joint benefit of the parties, the trial court properly considered the $90,000 obligation a marital debt. As discussed above, marital debts should generally be divided equally between the spouses. Thus, the trial court's decision to modify the magistrate's recommendation in order to effect an equal division of responsibility for the $90,000 loan was in accordance with the law and not unreasonable, arbitrary, or unconscionable. Accordingly, the trial court did not abuse its discretion.

{¶30} Finally, in her fourth assignment of error, Sara argues that the trial court erred by deciding to reduce the length of the term of spousal support owed by Jeffrey from 66 months to 54 months. "'Pursuant to R.C. 3105.18, a reasonable amount of spousal support should be awarded when appropriate.'" *Siferd*, 2017-Ohio-8624, at ¶ 39, quoting *Jordan v. Jordan*, 3d Dist. Hancock No. 5-03-07, 2003-Ohio-7116, ¶ 14. "R.C. 3105.18 'directs a trial court to use the factors to determine whether spousal support is "appropriate and reasonable," not whether it is "necessary."'" *Id.*, quoting *Muckensturm v. Muckensturm*, 3d Dist. Hancock No. 5-

11-38, 2012-Ohio-3062, ¶ 20, citing *Chaudhry v. Chaudhry*, 9th Dist. Summit No. 15252, 1992 WL 74204, *3 (Apr. 8, 1992). The fourteen factors under R.C. 3105.18(C) include:

    (a)   The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

    (b)   The relative earning abilities of the parties;

    (c)   The ages and the physical, mental, and emotional conditions of the parties;

    (d)   The retirement benefits of the parties;

    (e)   The duration of the marriage;

    (f)   The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

    (g)   The standard of living of the parties established during the marriage;

    (h)   The relative extent of education of the parties;

    (i)   The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n). "'[O]nce the factors of R.C. 3105.18 have been considered, the amount of spousal support is within the sound discretion of the trial court.'" *Siferd* at ¶ 39, quoting *Jordan* at ¶ 14, citing *Young v. Young*, 9th Dist. Lorain No. 93CA005554, 1993 WL 548765 (Dec. 29, 1993).

**{¶31}** In the portion of his decision dealing with spousal support, the magistrate conducted an exhaustive analysis of the relevant R.C. 3105.18(C)(1) factors. (*See* Doc. No. 54). Neither Sara nor Jeffrey took issue with the majority of the magistrate's R.C. 3105.18(C)(1) findings. Instead, Jeffrey's objections focused only on the magistrate's findings concerning the duration of the parties' marriage and the effect that an informal support arrangement entered into between Sara and Jeffrey during the pendency of their divorce should have on the length of the term of spousal support. The magistrate found, in relevant part, as follows:

> The Court may issue a spousal support order if it is appropriate and reasonable. In determining whether to do so, the court considers all relevant factors including those listed in 3105.18 of the Ohio Revised Code. The Court notes first that the parties were married on 10/30/1998, and the marriage lasted nearly 15 years up to the date of the complaint and 17 years to the start of the final hearing. * * * The court also notes that during the proceedings the parties entered into an informal support agreement which will be taken into consideration for spousal support.
>
> * * *
>
> [Jeffrey] testified that the credit card listed at $6,000 per month * * * which he included in his budget in Exhibit 92 was used for

miscellaneous expenses and to provide temporary spousal support to [Sara] without a formal Court order per the parties['] agreement. In Exhibit R [Jeffrey] lists the monthly support payments he has made to [Sara] per the informal agreement to provide her with temporary support in lieu of an actual * * * spousal support order. * * * This arrangement went on while [Sara] lived in the marital home and after she moved out. * * * Thus, it appears that the $6,000 per month credit card payment listed on [Jeffrey's] budget is representative of this informal agreement and not a regular family expense.

* * *

[T]he court has taken into consideration all of the statutory factors, testimony, comments in the briefs, fact statements in this decision, the need for and ability to pay support, the likely child support amount, and all other relevant factors. Upon due consideration, the Court finds that a reasonable and appropriate order of spousal support should be $4,400 per month modifiable for a period of sixty six months * * *.

(Doc. No. 54).

**{¶32}** With respect to the length of the parties' marriage and the term of spousal support, the trial court concluded as follows:

[Jeffrey's] final objections relate to determination of [his] income for purposes of child and spousal support, and the duration of spousal support to be paid.

Relating to the Magistrate's determination of income, again, absent a transcript and being required to rely on the Magistrate's factual determinations, the Court finds that the Magistrate's determination of income is appropriate. While * * * from evidence referred to by the Magistrate, it would have been possible to draw up different factual conclusions, the Court under the circumstances is satisfied that[,] based on the facts determined by the Magistrate, the determination of [Jeffrey's] income is proper.

Addressing the duration of spousal support, the Court determines that, in the absence of a transcript, the Magistrate's finding related to duration of the marriage will not be disturbed. The principle legitimate issue raised by [Jeffrey's] objection is the period of time, if any, during the pendency of the divorce for which [Jeffrey] should be credited against the spousal support term. It is clear, and acknowledged by the Magistrate, that an effectively informal spousal support arrangement existed throughout the pendency of the divorce. * * * [I]t appears to the Court that the amount of spousal support, and

the provisions relating to modification of the spousal support upon majority of a child are proper and will not be disturbed. Nevertheless, the sixty-six (66) month term for payment established by the Magistrate is not appropriate. Spousal support has effectively been paid during the pendency. The Court's determination, therefore, based upon the facts found by the Magistrate, is that the appropriate term of spousal support in the amount found by the Magistrate is fifty-four (54) months rather than sixty-six (66) * * *.

(Doc. No. 65).

{¶33} We conclude that the trial court did not abuse its discretion by modifying the magistrate's decision in order to reduce the length of the term of spousal support from 66 months to 54 months. From the magistrate's decision and the trial court's discussion of that decision, it is clear that the magistrate and the trial court thoroughly considered the R.C. 3105.18(C)(1) factors. Thus, the length of the term of spousal support owed to Sara was within the trial court's sound discretion.

{¶34} In its decision modifying the magistrate's spousal support recommendation, it is clear that the trial court did not change any of the magistrate's findings of fact or make additional findings of fact. Instead, the trial court used the magistrate's findings of fact without any modifications and simply reached a different conclusion about the appropriate length of spousal support from those

findings. Specifically, the trial court acknowledged the magistrate's findings as to the informal spousal support arrangement entered into by Sara and Jeffrey but, in settling on the appropriate length of the term of spousal support, it gave greater weight to this informal arrangement than the magistrate did. We cannot say that the trial court modified the magistrate's decision in an arbitrary, unreasonable, or unconscionable manner. Thus, the trial court did not abuse its discretion.

{¶35} Therefore, Sara's second, third, and fourth assignments of error are overruled.

{¶36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**